[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 59.]

BEAGLE, PETITIONER, *v.* WALDEN ET AL.; STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, RESPONDENT.

[Cite as *Beagle v. Walden*, 1997-Ohio-234.]

*Insurance—Motor vehicles—Mandatory offering of uninsured and underinsured motorist coverage—Amended R.C. 3937.18(A)(2) is constitutional.*

(No. 95-2409—Submitted November 12, 1996—Decided March 26, 1997.)

ON ORDER from the United States District Court for the Northern District of Ohio, Eastern Division, Certifying a Question of State Law, No. 5:95CV1146.

_____

*Jeffrey S. Wilkof,* for petitioner.

*Buckingham, Doolittle & Burroughs* and *David W. Hilkert; Meyers, Hentemann, Schneider & Rea* and *Henry A. Hentemann,* for respondent.

*Clark, Perdue, Roberts & Scott, Edward L. Clark* and *Glen R. Pritchard,* in support of petitioner, for *amicus curiae* Ohio Academy of Trial Lawyers.

*Vorys, Sater, Seymour & Pease, John J. Kulewicz* and *William D. Kloss*, in support of respondent, for *amicus curiae* Ohio Insurance Institute.

_____

COOK, J.

{¶ 1} The United States District Court for the Northern District of Ohio, Eastern Division, has certified the following question to this court pursuant to S.Ct.Prac.R. XVIII:

"Is Ohio Revised Code § 3937.18(A)(2) unconstitutional on any grounds under the facts of this case, including those stated by Plaintiff[?]"

{¶ 2} We respond to the certified question as follows: We do not find R.C. 3937.18(A)(2) unconstitutional on any ground argued by the plaintiff.

**{¶ 3}** The statement of facts as presented to this court in the federal district court's certification order follows:

"This case involves a claim by Plaintiff, Jason Beagle, for benefits under an insurance policy issued by Defendant, State Farm Mutual Automobile Insurance Company.

"On November 23, 1994, Plaintiff was operating a motor vehicle on I-76, eastbound, in Westfield Township, Medina County, Ohio. As Jason was proceeding on the interstate, a motor vehicle driven by Katherine Walden crossed the median and collided with the Beagle vehicle head-on. Mr. Beagle sustained serious injuries. To date, the medical bills for Jason Beagle are in excess of One Hundred Thousand Dollars ($100,000.00).

"Katherine Walden was insured by Farmers Insurance Company with One Hundred Thousand Dollars ($100,000.00) per person and Three Hundred Thousand Dollars ($300,000.00) per accident liability coverage. Jason was an insured under automobile liability policies issued by Defendant State Farm, which policies provided for uninsured/underinsured limits of One Hundred Thousand Dollars ($100,000.00) per person and Three Hundred Thousand Dollars ($300,000.00) per accident.

"Under the provisions of amended Ohio Revised Code 3937.18(A)(2), effective October [20], 1994, Jason Beagle would not be entitled to any underinsured motorist proceeds."

**{¶ 4}** The petitioner raises several grounds for finding that the amendment violates the Ohio Constitution. Petitioner argues that R.C. 3937.18(A)(2) invades the judiciary's exclusive province (Section 1, Article IV) and violates the "one-subject" rule (Section 15[D], Article II), the Right to a Remedy Clause (Section 16, Article I) and the Equal Protection and Privileges and Immunities Clauses (Section 2, Article I) of the Ohio Constitution.

**{¶ 5}** In addressing the petitioner's arguments, we adhere to two well-established legal principles. The first requires that "[s]tatutes are presumed to be constitutional unless shown beyond a reasonable doubt to violate a constitutional provision." *Fabrey v. McDonaldPolice Dept.* (1994), 70 Ohio St.3d 351, 352, 639 N.E.2d 31, 33. The second cautions that "[t]he legislature is the primary judge of the needs of public welfare, and this court will not nullify the decision of the legislature except in the case of a clear violation of a state or federal constitutional provision. *Williams v. Scudder* (1921), 102 Ohio St. 305, 131 N.E. 481, paragraphs three and four of the syllabus." *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 515, 620 N.E.2d 809, 820 (Moyer, C.J., dissenting).

### The One-Subject Rule

**{¶ 6}** The amendment to R.C. 3937.18(A)(2) in question was accomplished by the enactment of Am.Sub.S.B.No. 20, 145 Ohio Laws, Part I, 204, 210 ("Senate Bill 20"). The bill as originally introduced did not affect R.C. 3937.18. Its scope was limited to Revised Code sections dealing with financial responsibility law. It was only after the bill had been passed by the Senate and considered by the House on several occasions that this court announced its decision in *Savoie*, and that Senate Bill 20 was amended to include a legislative response.

**{¶ 7}** Petitioner and his *amicus curiae* urge that the late amendments to Senate Bill 20 constitute legislative logrolling -- the practice that the one-subject provision is intended to eliminate. *Hoover v. Franklin Cty. Bd. of Commrs.* (1985), 19 Ohio St.3d 1, 6, 19 OBR 1, 5, 482 N.E.2d 575, 580. Specifically, petitioner contends that the amendments related to uninsured/underinsured motorist coverage do not share the required commonality with the financial responsibility amendments of the Act to satisfy the one-subject rule.

**{¶ 8}** In determining whether Senate Bill 20 passes muster under the one-subject rule, we follow *State ex rel. Dix v. Celeste* (1984), 11 Ohio St.3d 141, 11 OBR 436, 464 N.E.2d 153. In *Dix,* this court stressed the directory nature of the

one-subject rule, holding that a judicial finding of unconstitutionality is proper only when a violation of the rule is manifestly gross and fraudulent. *Id.* at 145, 11 OBR at 440, 464 N.E.2d at 157.  In order to find a legislative enactment violative of the one-subject rule, a court must determine that various topics contained therein lack a common purpose or relationship so that there is no discernible practical, rational or legitimate reason for combining the provisions in one Act.  *Id.*

{¶ 9} No doubt, Senate Bill 20 addresses multiple topics.  A common thread, however, ties each of these topics together.  Each amendment works as part of a legislative scheme to reduce the dangers posed by uninsured and underinsured motorists.  This court recognized the nexus between financial responsibility requirements and the availability of uninsured/underinsured motorist coverage in *Savoie,* 67 Ohio St.3d at 507-508, 620 N.E.2d at 815, wherein the majority noted:

"This interpretation of R.C. 3937.18(G) is consistent with the concerted effort of the General Assembly to force all motorists to maintain liability insurance coverage on motor vehicles being operated within the state of Ohio.  The Financial Responsibility Act requires that all motorists have the 'ability to respond in damages for liability,' and provides severe penalties for failure to comply.  R.C. 4509.01(K).

"Regrettably, the General Assembly has not succeeded in its effort to force every motorist to maintain liability insurance coverage. *** The purchase of full uninsured/underinsured coverage is the only possible means for responsible motorists to protect themselves and their families."

{¶ 10} Accordingly, we conclude that there exists a common relationship among the topics contained in Senate Bill 20, and, therefore, combination of those topics does not offend the one-subject rule.

### Separation of Powers

{¶ 11} Petitioner argues that by legislatively overruling this court's decision in *Savoie,* the General Assembly usurped the exclusive province of the judiciary.

Contrary to the petitioner's assertions, however, the *Savoie* court did not rely upon constitutional considerations in reaching its conclusions. Instead, the *Savoie* court interpreted the legislative purpose behind R.C. 3937.18.

{¶ 12} Interpretation of the state and federal Constitutions is a role exclusive to the judicial branch. In the absence of a constitutional concern, however, the judiciary's function is to interpret the law as written by the General Assembly. "'[T]he legislature is the final arbiter of public policy, unless its acts contravene the state or federal Constitutions.'" *State v. Smorgala* (1990), 50 Ohio St.3d 222, 224, 553 N.E.2d 672, 675, quoting *State v. Kravlich* (1986), 33 Ohio App.3d 240, 246, 515 N.E.2d 652, 657-658 (Markus, C.J., concurring).

{¶ 13} The interpretation of R.C. 3937.18(A)(2) advanced in *Savoie* did not meet with legislative approval. It was the General Assembly's prerogative to redress its dissatisfaction with new legislation. See *Hearing v. Wylie* (1962), 173 Ohio St. 221, 223, 19 O.O.2d 42, 43, 180 N.E.2d 921, 923, overruled on other grounds in *Village v. Gen. Motors Corp.* (1984), 15 Ohio St.3d 129, 131, 15 OBR 279, 280, 472 N.E.2d 1079, 1081.

### Equal Protection

{¶ 14} Petitioner alleges that R.C. 3937.18(A)(2) violates the Equal Protection Clause of the Ohio Constitution because it denies "certain insurance consumers the benefit of the underinsured coverage they had purchased, while permitting others access to those benefits." Again, we disagree.

{¶ 15} The standard for determining violations of equal protection is essentially the same under the state and federal law. *Beatty v. Akron City Hosp.* (1981), 67 Ohio St.2d 483, 491, 21 O.O.3d 302, 307, 424 N.E.2d 586, 591-592.

{¶ 16} The preliminary step in analyzing an equal protection challenge involves scrutiny of classifications created by the legislation. "[W]here there is no classification, there is no discrimination which would offend the Equal Protection Clauses of either the United States or Ohio Constitutions." *Conley v. Shearer*

(1992), 64 Ohio St.3d 284, 290, 595 N.E.2d 862, 868. Moreover, "[o]nly when it is shown that the legislation has a substantial disparate impact on classes defined in a different fashion may analysis continue on the impact of those classes." *Califano v. Boles* (1979), 433 U.S. 282, 294, 99 S.Ct. 2767, 2774, 61 L.Ed.2d 541, 551.

"'[W]henever the law operates alike on all persons and property, similarly situated, equal protection cannot be said to be denied.'" *Union Sav. Assn. v. Home Owners Aid, Inc.* (1970), 23 Ohio St.2d 60, 63, 52 O.O.2d 329, 330, 262 N.E.2d 558, 560, quoting *Walston v. Nevin* (1888), 128 U.S. 578, 582, 9 S.Ct. 192, 193, 32 L.Ed. 544, 546. Insureds carrying identical policy limits are treated the same under R.C. 3937.18(A)(2). The only classifications of insureds treated differently under R.C. 3937.18(A)(2) are those who, by contract, have chosen different policy limits.

{¶ 17} Insureds purchase their levels of protection. If an insured purchases uninsured/underinsured motorist coverage in the amount of $100,000 per accident and $300,000 per occurrence, the insured is guaranteed total recovery for an accident up to those policy limits, regardless of the tortfeasor's insurance status. If the insured purchases higher or lower policy limits, those limits will dictate the total recovery available stemming from an accident with an uninsured or underinsured tortfeasor.

{¶ 18} Differences in treatment based on the individual contract between the insurer and the insured do not impinge upon a fundamental right or burden a suspect class. Moreover, a rational basis undeniably supports giving effect to the policy limits bargained for by the parties.

### Right to a Remedy

{¶ 19} Petitioner claims that R.C. 3937.18(A)(2) destroyed a remedy created by *Savoie*. *Savoie*, however, did not create a remedy. The *Savoie* court interpreted what coverage R.C. 3937.18(A)(2) then mandated. The *Savoie* controversy involved the amount which the insureds were entitled to receive in accordance with insurance contracts which were subject to the requirements of R.C.

3937.18. *Savoie* was not based on constitutional or common-law principles of full recovery in tort.

{¶ 20} R.C. 3937.18 results from legislative policymaking. Coverage in accordance with R.C. 3937.18 is not a *common-law* right. Any *contractual* right to coverage prescribed under R.C. 3937.18 does not, therefore, come within the protection of Section 16, Article I of the Ohio Constitution. *Fabrey v. McDonald Police Dept.*, 70 Ohio St.3d at 355, 639 N.E.2d at 35; *Mominee v. Scherbarth* (1986), 28 Ohio St.3d 270, 291-292, 28 OBR 346, 364-365, 503 N.E.2d 717, 733-734 (Douglas, J., concurring). To the extent that the legislature may exercise its policymaking authority to alter the contractual relationship between insurer and insured to provide greater protection to the insured, it may also limit or remove those protections once given. See *Byers v. Meridian Printing Co.* (1911), 84 Ohio St. 408, 422, 95 N.E. 917, 919; see, also, *Mominee v. Scherbarth*, 28 Ohio St.3d at 292, 28 OBR at 365, 503 N.E.2d at 734 (Douglas, J., concurring).

### Privileges and Immunities

{¶ 21} R.C. 3937.18 places a statutory *obligation* on all motor vehicle liability insurers to offer uninsured/underinsured motorist coverage. To this extent, the parties' freedom to contract is superseded in furtherance of important public policy concerns. In placing this obligation on insurers, the General Assembly dictates the terms of the mandatory offering of uninsured/underinsured motorist coverage. Petitioner takes issue with those portions of Senate Bill 20 that limit an insurer's statutory obligation, claiming that those limitations violate the Privileges and Immunities Clause of the Ohio Constitution.

{¶ 22} Because the obligation to offer uninsured/underinsured motorist coverage is rooted in public policy and imposed by the legislature, the legislature is free to delimit the obligation. By obligating all motor vehicle liability insurers in a like manner, the General Assembly does not grant special privileges or

immunities. Accordingly, the Privileges and Immunities Clause is inapplicable to this case.

## Conclusion

**{¶ 23}** In accordance with the foregoing analysis, we determine that R.C. 3937.18(A)(2) survives each of petitioner's constitutional challenges.

MOYER, C.J., and LUNDBERG STRATTON, J., concur.

PFEIFER, J., concurs in part.

DOUGLAS and F.E. SWEENEY, JJ., dissent.

RESNICK, J., dissents and finds the statute unconstitutional.

_____

**PFEIFER, J., concurring in part.**

**{¶ 24}** I concur in the answer to the certified question given in the lead opinion with respect to the one-subject rule. I express no opinion on the other parts of the answer to the certified question given in the lead opinion.

**{¶ 25}** Section 15(D), Article II of the Constitution states that "[n]o bill shall contain more than one subject, which shall be clearly expressed in its title." The Constitution does not state that all provisions of a bill must affect the same chapter of the Revised Code. The Constitution does not prohibit legislative logrolling, whatever exactly that is. Rather, the Constitution requires a bill to contain no more than one subject.

**{¶ 26}** Am.Sub.S.B.No. 20, 145 Ohio Laws, Part I, 204 is titled: "An Act: To amend sections 3301.07, 3937.18, *** 4509.102, 4509.103, 4509.104, and 4513.022 of the Revised Code to revise the Financial Responsibility Law relative to the maintenance and demonstration of proof of financial responsibility and to the law's administration, enforcement, and sanctions; *** to permit automobile liability insurance policies to preclude all stacking of coverages; to declare that underinsured motorist coverage is not excess coverage ***." Senate Bill 20 diminishes the protection provided by underinsured motorist coverage and is

logically inconsistent with the General Assembly's ongoing attempt to ensure that all drivers in this state are covered by insurance. Nevertheless, using "one subject" in its commonsense meaning compels the conclusion that Senate Bill 20's amendment of R.C. 3937.18(A)(2) does not violate the one-subject rule. To conclude otherwise would put legislation through too fine a strainer and result in a less responsive General Assembly, if not a paralyzed one.

{¶ 27} This is not to say that the process of enactment used by the General Assembly in this instance was not distasteful. R.C. 3937.18 (A)(2) was amended without due deliberation and as a last-minute change at the end of the legislative session, even though the decision to be superseded had been decided nearly a year earlier. Further, the General Assembly's supersedure of a decision of this court by name is highly unusual. See Am.Sub.S.B.No. 20, Sections 7, 9 and 10, 145 Ohio Laws, Part I, 238-239. However ugly the process may have been, it was not unconstitutional.

{¶ 28} An unduly narrow interpretation of the one-subject rule would lead to insuperable problems. States that have an extremely narrow interpretation of their versions of the one-subject rule are deluged with thousands of legislative proposals to amend statutes each year. The resulting profusion of legislation necessarily means that little attention can be paid to each matter. Often, in those states, as many as fifty different bills are presented and voted on as a single package. This practical response to an untenable situation defeats the purpose of a narrow interpretation of "one subject."

{¶ 29} A narrow interpretation of "one subject" could lead the General Assembly to contemporaneously enact multiple amendments, creating attendant problems. See *State v. Wilson* (1997), 77 Ohio St.3d 334, ___ N.E.2d ___.

{¶ 30} I continue to believe that the common understanding of the term "underinsured motorist coverage" encompasses all damages not covered by the tortfeasor's liability insurance, up to the independent limit of the underinsured

motorist coverage. To expect purchasers of underinsured motorist coverage to comprehend the technical import of the language of their insurance contracts, not to mention the impact of R.C. 3937.18, is not realistic. As a possible solution to the inherent confusion concerning the meaning of "underinsured motorist coverage," I recommend a new term, for the consideration of the General Assembly and liability insurers, as a substitute for "underinsured motorist coverage": "combined motorist coverage."

{¶ 31} "Combined motorist coverage" means logically what the General Assembly has defined "underinsured motorist coverage" to mean. This term could be readily understood by judges, lawyers and insurance agents, not to mention the insurance-consuming public. Though it may be anathema to some, I believe purchasers of insurance should be able to understand the extent of their coverage without the intercession of an attorney.

{¶ 32} Senate Bill 20 returns Ohio to the state of confusion concerning underinsured motorist coverage that reigned until *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, was decided. Much of the confusion has been generated by the failure to appreciate the difference between *un*insured and *under*insured. These terms represent two distinctly different concepts and should be treated differently.

{¶ 33} Pursuant to the current version of R.C. 3937.18(A)(2), underinsured motorist coverage applies only when the tortfeasor's liability coverage does not provide as much coverage as the victim's underinsured motorist coverage. According to the statute, "underinsured motorist coverage" is always less than the dollar amount listed on the policy and the billing to the insured. In fact, to collect the full stated amount of underinsured motorist coverage, the insured has to collect under his or her uninsured motorist coverage.

{¶ 34} Until R.C. 3937.18(A)(2) is amended to put consumers on notice as to what is actually being purchased, the ongoing viability of R.C. 3937.18(A)(2),

on grounds other than the one-subject rule challenge rejected today, will be in question.

————————————