OPINION
This case is before us as an appeal from the Common Pleas Court of Butler County, Ohio, validating the bonds proposed to be issued by the Butler County Transportation Improvement District, its proposed lease agreement with the Ohio Department of Transportation, and all proceedings in connection therewith.
The multiple defendants-appellants raise as their sole assignment of error the final decision of the trial court and present for review the following issues involved in their single assignment of error:
 1. Whether the Bonds proposed to be issued by The Butler County Transportation Improvement District to fund construction of the Butler Regional Highway create a debt by, or on behalf of, the State of Ohio in violation of Article VIII, Section 3, of the Constitution of Ohio?
 2. Whether the proposed Lease Agreement between The Butler County Transportation Improvement District and the Ohio Department of Transportation relating to the Butler Regional Highway creates a debt by the State of Ohio in violation of Article VIII, Section 3, of the Constitution of Ohio?
 3. Whether the proposed Lease Agreement between the Butler County Transportation Improvement District and the Ohio Department of Transportation relative to the Butler Regional Highway violates Article VIII, Section 5, of the Constitution of Ohio.
 4. Whether the Butler County Transportation Improvement District has the authority to issue revenue bonds because the legislation establishing the authority of a transportation improvement district to issue bonds was adopted in violation of the single-subject rule of Article II, Section 15(D), Constitution of Ohio.
The trial court resolved these issues (except the third, which it did not address) in its thorough and well-reasoned decision which was filed on January 29, 1997, prior to its final appealable order which was entered on February 10, 1997. We cannot improve upon the reasoning and analysis presented by the Honorable Michael J. Sage in his decision, and we therefore adopt as our own the following relevant excerpts from that decision:
 The matter before the Court is the Butler County Transportation Improvement District's (hereinafter referred to as "TID") bond validation suit. The plaintiff desires to have this Court determine the authority of the TID to issue and the validity of bonds, the source of payment for the bonds, and all proceedings in connection with the issuance of the bonds to be used for the acquisition and construction of the Butler Regional Highway. For the below stated reasons, the Court believes that the Plaintiff Butler County Transportation Improvement District is entitled to judgment and validation as sought in its complaint.
I. Procedural Background
 On October 16, 1996 the Butler County Transportation Improvement District filed suit in the Butler County Court of Common Pleas pursuant to R.C. 133.70(B)(1) seeking validation for bonds in the amount of $136,620,000.00 for the purpose of financing the Butler Regional Highway.
* * *
 The named defendants in the suit were Roger W. Tracy, tax commissioner for the State of Ohio, Kay Rogers, auditor for Butler County, Ohio, all property owners, taxpayers and citizens of the Butler County Transportation Improvement District, and all persons affected or interested in the issuance of the TID revenue bonds by the TID.
* * *
 On November 7, 1996 an answer was filed by seven homeowners objecting to the issuance of the TID bonds and objecting to the validity of the lease and trust agreements entered into by the TID with the Ohio Department of Transportation (hereinafter referred to as "ODOT") and other parties. These property owners (hereinafter referred to as "Smerillo defendants") raised multiple defenses, including challenging the constitutionality of the relevant Revised Code sections dealing with transportation improvement districts along with raising the constitutionality of the lease and trust agreements entered into in this case.
* * *
 On November 14, 1996, pro se defendant Joseph Ebbing filed an answer and intervened as a defendant. On the date of the validation hearing on November 15, 1996, the Smerillo Defendants were further joined by an additional thirty-three homeowners, taxpayers and citizens represented by the same attorneys.
* * *
II. Statement of Facts
 The Plaintiff in this case is the Butler County Transportation Improvement District. The Butler TID was created by a resolution of the Board of County Commissioners of Butler County, Ohio through initial Resolution of December 7, 1993, and reaffirmed by a subsequent Commissioners' Resolution dated December 14, 1995. (Plaintiff's Exhibits B and C).
R.C. 5540.02(A) states:
 "A transportation improvement district may be created by the Board of County Commissioners of a county. The Board, by resolution, shall determine the structure of the Board of Trustees of the transportation improvement district it creates by adopting the structure contained either in division (C)(1) or (2) of this section."
The purpose of the Butler County TID was to initiate a number of transportation improvement projects in the Butler County area. The most significant project is the construction of the Butler Regional Highway. This highway seeks to connect the City of Hamilton with Interstate 75 by construction of a regional highway.
Pursuant to its authority in R.C. 5540.03(A)(5) and R.C.5540.06, the Butler County TID seeks to issue revenue bonds pursuant to R.C. 133.70(A)(1) in the amount of $136,620,000.00 for the purpose of financing a portion of the Butler Regional Highway. This suit was filed to determine the TID's authority to issue these bonds.
The Butler TID has further entered into an agreement with ODOT in which the TID has agreed to issue and sell its transportation improvement district revenue bonds in order to provide funds to finance the regional highway (Plaintiff's Exhibit D).
The Butler TID has further entered into a lease/purchase agreement with ODOT as authorized by R.C. 5540.04 and 5540.031
(Plaintiff's Exhibit F). Under the lease agreement, ODOT will make lease payments which the TID will use to pay the principle [sic] and interest on the bonds.
The Butler TID further intends to enter into a trust agreement with a corporate trustee for the purpose of administering the bonds and payment of the bonds (Plaintiff's Exhibit E). R.C.5540.10(A). The Butler County TID has also entered into a contract with Seasongood Mayer as the underwriter of the bonds. (Plaintiff's Exhibit H). R.C. 5540.03(A).
Under the agreement, the Butler County TID will issue bond which will pay for the construction of the regional highway. ODOT will in turn lease the highway from the TID with an agreement obligating it to pay the principle and interest for the bonds subject to the State's biennial limitation, which limits the State only to a two year obligation for these payments.
However, it is the expectation of all parties that every two years the State will continue to pay the principle [sic] and interest on the bonds issued by the Butler TID.
* * *
 B. Ohio Constitutional Rule on Debt Limitation.
The first objection raised by the Smerillo defendants opposing the validation of the bond suit is that the lease agreement between the Butler TID and ODOT unconstitutionally creates a debt of the State of Ohio not authorized by the constitution for the payment of the bonds.
Article VIII, Section 3 of the Ohio Constitution, provides:
 "Except the debts above specified in Sections 1 and 2 of this Article, no debt whatever shall hereafter be created by or on behalf of the state."
Further, Article XII, Section 6 of the Ohio Constitution prohibits the State of Ohio from contracting any debt for purposes of internal improvement. The Smerillo defendants argue that even though the bonds will be issued by the Butler TID, the State is, in fact, creating debt and borrowing money in excess of the constitutional limit because the State has agreed in the lease agreement to make payments sufficient to pay the debt service on the bonds. After reviewing all the agreements and testimony, the Court believes the issuance of the bond will not result in the State of Ohio creating a "debt" as the term is used in Article VIII of the Ohio Constitution.
The agreement between ODOT and Butler TID dated April 24, 1995, the trust agreement to be entered into between Butler TID and the corporate trustee administering payment, the lease agreement between ODOT and Butler TID, and the bond agreement between the Butler TID and the bond underwriters are explicit in stating that the bonds will be issued solely by the Butler TID and will be the debt of the TID. On page A-2 (Plaintiff's Exhibit E) the trust agreement specifically states in boldfaced type that the bonds are solely to be issued by the Butler TID:
 "The Series 1996 Bond is a special obligation of the District, and does not represent or constitute a debt of the State of Ohio or any political subdivision of the State of Ohio, and does not represent or constitute a pledge of the faith and credit of the State, any political subdivision of the State and the Holders or Owners hereof shall have no right to have any excises or taxes levied by the General Assembly of the State for the payment of the Bond Service Charges hereon. The right of such Holders and Owners to payment of such Bond Service Charges shall be limited to the Pledged Receipts hereinafter defined."
This fact is further emphasized in the preliminary official statement for the issuance of the bonds. At page V of the official statement, potential bondholders are told:
 "The obligations of ODOT to make lease payments and to perform other obligations involving expenditures under the Lease and each renewal thereof, are subject to and dependent upon biennial appropriations for ODOT being made by the General Assembly for such purpose. If the General Assembly were to fail to appropriate moneys to renew the Lease, the Lease would terminate. The General Assembly may not, under the provisions of the Ohio Constitution, make appropriations for a period longer than two years. While the T.I.D. expects that the General Assembly will, for each State fiscal biennium, continue to appropriate amounts to ODOT sufficient to meet its lease payment obligations under the Lease to the T.I.D. consistent with the State budget, the General Assembly is not under a legal obligation to make appropriations in accordance with such State budgets for future State fiscal biennia. The Series 1996 Bonds are special obligations of the T.I.D. payable solely from the Pledged Receipts under the Trust Agreement. The Series 1996 Bonds do not represent or constitute a debt of the State, the T.I.D., the County of Butler or of any political subdivision thereof, nor a pledge of the faith and credit of the State, any political subdivision thereof, or the T.I.D. The Holders and Book-Entry Interest Owners of the Series 1996 bonds will have no right to have excises or taxes levied by the General Assembly for the payment of the debt service charges on the c Series 1996 Bonds. The 1996 Project is not pledged or mortgaged as security for the Series 1996 Bonds and the Trustee will not have the right to take possession of or operate the 1996 Project upon a default under or termination of the Lease. In the event of nonappropriation by the General Assembly, it is extremely unlikely that the T.I.D. will have sufficient funds or revenues to pay debt service on the Series 1996 Bonds."
Under Section 7 of the lease agreement ODOT has agreed to make to make lease payments to the Butler TID in an amount sufficient to allow the Butler TID to pay the debt service on the bonds. ODOT has not assumed any obligation to the bond holders. The lease is very specific in stating that the lease does not create any debt or obligation to the bond holder. This fact is established by Sections 1A and 34 of the lease:
 SECTION 1A. No Indebtedness of State. It is expressly understood and agreed by the parties hereto that the obligations of the Lessor and the Lessee created by or arising out of this Master Lease Agreement or of any amendments hereto or renewals hereof or Supplemental Leases shall not be, represent, or constitute indebtedness, bonded or otherwise, of the State, the Lessor or Lessee within the meaning of such term in the Constitution of the State or the laws of the State or a pledge of the faith or credit of the State or the Lessor or the Lessee, or grant to the owners or holders of the Bonds any right to have the General Assembly levy any excises or taxes for the payment of bondservice charges, Basic Rent, Additional Rent or other sums hereunder and that neither the Lessor nor the Lessee shall obligate or pledge for the payment of the Project Bonds or the Lease Payments or Rent due hereunder moneys raised by taxation.
SECTION 34. No Debt or Tax Pledge of Lessee. No agreement, certificate, covenant or provision contained herein or the breach thereof, and no obligation or duty herein imposed upon the Lessee, shall constitute a debt of the Lessee or any person or cause or create a charge against the general credit or taxing powers of the State. Notwithstanding any other provision of this Master Lease, all obligations of the Lessee under this Master Lease are subject to the appropriation of funds for such purposes by the Ohio General Assembly and the certification of the availability of such funds by the Director of Budget and Management pursuant to Ohio Revised Code. Neither the Lessee nor any person shall be obligated to pay any amounts in connection with the transactions contemplated hereby except with respect to funds which have been lawfully appropriated by the General Assembly and then only after a certification of the availability of such appropriation has been made by the Director of Budget and Management pursuant to Ohio Revised Code. Nothing herein shall constitute an obligation to appropriate or cause such funds not presently appropriated to be appropriated at any future time.
As stated in Section 34 above, ODOT's obligation to pay rent is subject to appropriations being made by the General Assembly. Section 8 of the same agreement specifically provides if the General Assembly does not appropriate sufficient funds for payment of the lease during any biennium, the lease and the State's obligation therein will terminate.
SECTION 8. Non-Appropriation of Funds: Event of Non-Appropriation. If, on or before August 30 of any odd-numbered year, the State legislature has not appropriated amounts to the Lessee for the purpose of making Lease Payments under this Lease and sufficient to permit the Lessee to pay Base Rent and Additional Rent hereunder ("Event of Non-Appropriation"), the Lessee shall promptly notify the Trustee and the Lessor. Thereupon, regardless of whether such notice is actually received, the Lease will terminate at the end of the current Lease Term.
Notwithstanding the immediately preceding paragraph, the Lease (I) shall be renewed if by October 1, of each odd-numbered year the Lessee delivers a written statement to the trustee that sufficient funds are legally available for making all Lease Payments due under the Lease during the next renewal period and that such funds have been made available for the purpose of paying all the Base Rent and Additional Rent, together with such statement, the Lessee shall also deliver to the Trustee records, certificates, minutes of meetings or other evidence reasonably satisfactory to the Trustee as to the availability of such funds, and (ii) will continue in effect for the next renewal period so long as there is an appropriation for such purpose or other funds legally available on each Lease Payment Date sufficient to pay all Base Rent and Additional Rent then due and payable; provided, however, that the Lessee is explicitly neither obligating nor pledging for the payment of the Project Bonds or the Lease Payments or Rent due hereunder moneys raised by taxation.
"If the Lease terminates as a result of an Event of NonAppropriation, the Lessee shall surrender possession of the Project and the Lessee will have no obligation to make any further payments with respect to the Project, and will have no liability to the Trustee or the Owners for the unpaid principal amount of the Project Bonds or the interest which accrues for such renewal period for which no appropriation was made. No penalty, expense, or liability shall result to the Lessee due to termination of the Lease under this Section."
This Court has gone to great lengths to repeat the agreements and trust documents because it is important for all parties to understand the specific language that is the basis of the agreement between the Butler TID and ODOT. The specific agreeagreement, lease, and trust documents make it very clear that the issuers of the revenue bonds is the Butler TID. The same documents make it clear that the bonds do not create any debt or obligation on behalf of the State of Ohio beyond the terms of the lease. These agreements specifically also indicate that the lease agreement is subject to the State Legislature appropriating sufficient amounts every biennium to service this agreement. It is abundantly clear that ODOT, and therefore the State of Ohio, has obligation under the lease only if the General Assembly has appropriated money for its payments and only for the biennial period.
The Smerillo defendants argue that when this Court reviews whether a particular transaction creates a debt of the State of Ohio this Court must look beyond the plain language of the authorizing statute and consider the practical effect of the transaction. The Court "must examine a transaction not only for what is purports to be, but what it actually is." State, ex rel. Ohio Funds Management Board v. Walker (1990), 55 Ohio St.3d 1. These defendants argue that because the State of Ohio in substance is the only entity with any obligation to pay the debt service on the bonds, this obligation violates the constitutional limitations previously discussed. These defendants argue that ODOT is obligated to make the lease payments for the full term of the bonds, and since this obligation exceeds the biennial limitations of the Ohio Constitution, it violates Article VIII of the Ohio Constitution.
As the Court has previously stated, the specific provisions of the lease and bond agreement state that ODOT has no obligation beyond the obligation specifically stated in the agreement. Equally important, R.C. 5540.09(A) provides that bonds issued by a transportation improvement district can not constitute a debt of the State:
 "The bonds do not constitute a debt, or pledge of the faith and credit of the State or of any political subdivision of the State. Bond service charges on outstanding bonds are payable solely from the pledged revenues pledged for their payment as authorized by this chapter and as provided in the bond proceedings. All bonds shall contain on their face a statement to the effect."
The Ohio Supreme Court has held that the obligations authorized by the General Assembly for which no corresponding appropriations are made and obligations that will extend beyond a fiscal biennium of the State are debts of the State of Ohio which are subject to the constitutional debt limitation. State v. Medbery (1857), 7 Ohio St. 522. This constitutional provision, however, does not limit or prevent a state agency such as ODOT from entering into a lease agreement that by its term is conditioned upon the appropriation of funds. State ex rel. Ross v. Donahey (1916) 93 Ohio St. 414. A case with directly analogous facts is Preston v. Ferguson, 170 Ohio St. 450 (1960). There, the School Employees System Retirement Board was authorized by statute to enter into an agreement with the Department of Highways to purchase and hold land that the director of highways considered necessary for the highway system. The duration of the agreement was limited to the current two-year period of appropriations to the Department of Highways, but could be renewed for additional two year periods. It was contended that the agreement was in violation of Article VIII, Section 1 of the Constitution because it would create a debt in excess of the debt limit.
The Court concluded that state contracts do not create an unconstitutional debt if:
 (1) they require that appropriations be made and revenue provided for each two-year obligation (which Judge Swan characterized as `constitutional compliance') and (2) they specifically provide that each agreement may not extend beyond two years. Id. at 456.
From this, the Court stated in the second paragraph of its syllabus the rule of law directly applicable to ODOT's obligation under the lease agreement.
Obligations of the State for which revenue has been provided and appropriations made for the payment thereof in the then current biennium are not debts within the meaning of Sections 1,2, and 3, Article VIII, Ohio Constitution.
The Court in Preston further concluded that options to renew a state contract after the expiration of the current biennium, that are also subject to appropriations being made in the succeeding biennia, also did not violate the constitutional debt limit. Id. at 457.
Based upon the specific language of the lease and trust agreements, and based upon the Ohio Revised Code, ODOT's obligation to make lease payments is not a debt subject to the Article VIII debt limitation. The term of the lease does not extend beyond the two year period of the current biennium and is only renewable for successive two year periods at the pleasure of the State Legislature. All lease payments are subject to the appropriations by the Ohio General Assembly. The State's obligation is to make lease payments and not bond payments. By the very terms of the agreement, if the Ohio General Assembly failed to make an appropriation, it would be the responsibility of the Butler TID and not the State of Ohio or ODOT to find alternative sources of revenues to pay the Butler TID bonds.
To adopt the Smerillo defendants' position would require this Court to completely ignore the specific language of the bond documents and the related lease agreement and terms of the Ohio Revised Code. For these reasons, this Court must conclude that the State of Ohio has not created any debt limitation in violation of the Ohio Constitution.
* * *
D. Constitutionality of R.C. Chapter 5540 Concerning the Single-Subject Requirement of Article II, Section 15(D), Ohio Constitution.
The final argument of the Smerillo defendants is that the Butler TID has no authority to issue revenue bonds because the legislation creating the authority of the transportation improvement district to issue bonds was adopted in violation of the single-subject rule of Article II, Section 15(D) of the Constitution of Ohio.
Article II, Section 15(D) of the Ohio Constitution requires that:
 "(N)o bill shall contain more than one subject, which shall be clearly expressed in its title . . ."
The Smerillo defendants argue that H.B. 715 (effective date 7/22/94), H.B. 790 (effective date 9/12/94), H.B. 107 (effective date 6/30/95), H.B. 7 (effective date 9/1/95), H.B. 117 (effective date 9/29/95) and S.B. 310 (effective date 9/19/96) violate the single-subject rule of the Ohio Constitution. Most specifically, the Smerillo defendants argue that S.B. 310, which amend R.C. 5540.03 and 5501.311, was legislation which contained over 152 pages of legislative change of which only one and a half pages relate to changing of the law as it relates to transportation improvement districts and the issuance of bonds. Specifically, S.B. 310 deals with state appropriations and funding of the various agencies doing business in the State of Ohio.
In dealing with the constitutionality of a statute, all statues are presumed constitutional. The party challenging the statute bears the burden of proving otherwise. Further, the legislation being questioned will not be invalidated unless the challenger establishes that it is unconstitutional beyond a reasonable doubt. State v. Thompkins (1996), 75 Ohio St.3d 558.
The standard for applying the single subject provision of Article II, Section 15(D) of the Constitution was stated by the Ohio Supreme Court in State ex rel. Ohio v. Voinovich (1994),69 Ohio St.3d 225:
 This Court has held that Section 15(D), Article II is directory rather than mandatory. State ex rel. Dix v. Celeste (1984), 11 Ohio [sic] St.3d 141, 11 OBR 436, 464 N.E.2d 153. "There is no question that by holding that the onesubject rule is directory and not mandatory, judicial interference with legislative action is reduced." Id. at 144, 11 OBR at 439, 464 N.E.2d at 156. However, although we are most reluctant to interfere in the legislative process, we will not "abdicate [our] duty to enforce the Ohio Constitution." Id. at 144, 11 OBR at 439, 464 N.E.2d at 157. Accordingly, we will hold enactments invalid under Section 15(D), Article II whenever there is a "manifestly gross and fraudulent violation" of this provision of the Ohio Constitution. Id. at syllabus. But "[t]he mere fact that a bill embraces more than one topic is not fatal, as long as a common purpose or relationship exists between the topics." (Emphasis added.) Hoover v. Bd. of Franklin Cty. Commrs. (1958), 19 Ohio St.3d 1, 6, 19 OBR 1, 5, 482 N.E.2d 575, 580."
The purpose of Article II, Section 15(D) is to limit "log rolling." However, Ohio courts have attempted to avoid unduly interfering with the legislative process and have held that the provisions of Article II, Section 15(D) are directory rather than mandatory. State ex rel. Dix v. Celeste (1984), 11 Ohio St.3d 141. Ohio courts have been willing to find violations of the single-subject rule only in cases where there is a "manifestly gross and fraudulent violation" of the one-subject rule. Id. at 145.
Though the Smerillo defendants broadly attack all the House Bill and Senate Bill changes which deal with the creation and operation of a transportation improvement district, they specifically deal with S.B. 310. This Court has reviewed the 392 pages of S.B. 310. The general subject of the Bill is the appropriation and financing of the Ohio government and the numerous activities of its political subdivisions. The mere fact that there are a multitude of topics of government financing contained within this Bill does not affect its validity as long as the topics have a common purpose or relationship. The Court believes that the common purpose and relationship of this Bill is that it relates to the financing of various governmental operations and entities. Consistent with that stated purpose, the legislation dealing with the transportation improvement districts' financing and operation is appropriate and related to the subject of S.B. 310.
R.C. 5501.311, which provides authority to ODOT to lease/purchase projects from a TID, and R.C. 5540.03 (a)(5)(a), which provides authority for a TID to issue bonds, fits squarely within the purpose and relationship of financing governmental operations. Both sections relate to the financing of projects undertaken by transportation improvement districts and therefore these sections are encompassed within the subject matter of the bill and comply with the requirements of the single-subject rule. There is nothing in this Bill which this Court finds beyond a reasonable doubt was manifestly gross or a fraudulent violation of Ohio's one-subject rule. This Court believes very strongly in the state legislature's right to proceed as it chooses within the proper constitutional limits to adopt legislature [sic] which it believes is in the State's interest. This Court's role is not to substitute its judgment for the state legislature's. Its limited role is to ensure that when the legislature exercises that judgment it does so within a proper constitutional framework.
* * *
 IV. Conclusion
The limited issue before this Court is Butler TID's authority to issue bonds for the construction of the Butler Regional Highway. The Butler TID seeks validation for its authority to issue the bond and for the validation for all agreements entered into in connection with the issuance of the bond and the construction of the Butler Regional Highway. This Court's role is not to judge the wisdom of the decision to issue the bonds or the wisdom of constructing the highway, but only to review Butler TID's authority to issue the $136,620,000.00 worth of bonds necessary for the construction of the Butler Regional Highway. This Court is also required as part of this suit to review the validity of the lease agreement between the Butler TID and ODOT, along with the trust and other documents necessary for the issuance of the bond. For the reasons stated above, the Court believes that the Plaintiff is entitled to the relief sought in its complaint.
The trial court's discussion of the Ohio single subject constitutional requirement has been recently validated again by the Ohio Supreme Court in Beagle v. Walden (1997), 78 Ohio St.3d 59, in which the supreme court reaffirmed State ex rel. Dix v. Celeste (1984), 11 Ohio St.3d 141, 464 N.E.2d 153, cited by the trial court here. Besides reaffirming Celeste, the supreme court in Beagle added: "In order to find the legislative enactment violative of the one-subject rule, a court must determine that various topics contained therein lack a common purpose or relationship so that there is no discernable practical, rational or legitimate reason for combining the provisions in one act." Beagle, at 62.
A further rationale for the liberal interpretation of the one-subject rule was added by Justice Pfeifer in his concurrence, as follows:
 An unduly narrow interpretation of the one-subject rule would lead to insuperable problems. States that have an extremely narrow interpretation of their versions of the one-subject rule are deluged with thousands of legislative proposals to amend statutes each year. The resulting profusion of legislation necessarily means that little attention can be paid to each matter. Often, in those states, as many as fifty different bills are presented and voted on as a single package. This practical response to an untenable situation defeats the purpose of a narrow interpretation of "one subject."
 A narrow interpretation of "one subject" could lead the General Assembly to contemporaneously enact multiple amendments, creating attendant problems. See State v. Wilson (1997), 77 Ohio St.3d 334, 673 N.E.2d 1347.
Beagle, at 66.
The one issue raised on appeal which the trial court did not address is the appellant's third issue: "Whether the proposed Lease Agreement between the Butler County Transportation Improvement District and the Ohio Department of Transportation relative to the Butler Regional Highway violates Article VIII, Section 5, of the Constitution of Ohio." This particular cited section of the Ohio Constitution provides that "the state shall never assume the debts of any county, city, town or township, or of any corporation whatever, unless such debt shall have been created to repel invasion, suppress insurrection, or defend the state in war."
The trial court probably assumed that it need not reach this issue because it found that there was in fact no assumption of debt by the state, and therefore it did not have to specifically address this issue. Again, we find that the trial court was correct in its reasoning and, further, we note that this section of the constitution only applies to certain political subdivisions of the state and not all of them. It does not apply to many other types of political subdivisions in Ohio, such as school districts, regional water and sewer authorities, solid waste authorities, or transportation improvement districts.
In its final appealable judgment entered on February 10, 1997, the trial court ultimately held as follows:
 18. The Court therefore determines that Plaintiff has the lawful authority to issue the Bonds upon the terms described herein, and that the Bonds, when issued, and the Agreement, the Trust Agreement, the Lease, and the Bond Purchase Agreement, when executed and delivered by the parties thereto in substantially the form as provided to the Court, will be valid and will constitute valid and legally binding obligations of Plaintiff, the Trustee, ODOT, and the underwriter of the Bonds, as the case may be in accordance with their respective terms. The Court further determines that all of the proceedings taken and proposed to be taken in connection therewith, as described herein, are lawful and valid.
 We adopt the aforementioned determination as our own, overrule the single assignment of error, and AFFIRM the judgment of the Butler County Court of Common Pleas.
Brogan and Fain, JJ., concur.