Timothy C. Coletta, administrator of the estate of Xiaoyan (Margaret) M. Yan, appeals from the Montgomery County Court of Common Pleas' entry of summary judgment in favor of St. Paul Fire Marine Insurance Company ("St. Paul").
The facts and procedural history are as follows.
On August 13, 1997, Yan was a passenger in a 1990 Toyota Celica driven by Chih Chiang (David) Yang on northbound State Route 48 in Montgomery County, Ohio. Yang lost control of the vehicle, causing it to veer off the side of the road and to slide and roll into a field. Yan was thrown out of the vehicle, and she died at the scene of the accident. Yan was survived by her parents, Suiping Yan and Shengli Wei. At the time of the accident, the vehicle was insured under a policy issued to its owner, Lin Ho Hui, by St. Paul. In relevant part, the policy provided coverage as follows:
 Bodily Injury $100,000 each person $300,000 each accident
Medical Payments $5,000 each person
 Uninsured Motorist $100,000 each person $300,000 each accident
On November 12, 1997, Coletta filed a wrongful death and survivorship action against Yang and Hui. Coletta subsequently amended the complaint to add a claim against St. Paul for declaratory judgment that he was entitled to collect up to the full $300,000 "per accident" bodily injury liability limit, $5,000 of medical payments coverage, and up to the full $300,000 "per accident" uninsured motorist limit. On April 30, 1998, St. Paul filed an answer, which included a request for a declaratory judgment that Coletta could recover no more than $100,000, the "each person" bodily injury liability limit, that this sum be reduced by any medical payments made, and that uninsured motorist coverage was unavailable. On June 1, 1998, St. Paul filed a motion for summary judgment on its claims for declaratory relief. Coletta filed a brief supporting his complaint for a declaratory judgment and a memorandum opposing summary judgment. On June 17, 1998, the trial court denied Coletta's request for declaratory judgment and awarded summary judgment in favor of St. Paul. On appeal, Coletta raises two assignments of error.
 I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT BY ALLOWING SENATE BILL 20 WHICH AMENDED OHIO REVISED CODE 3937.18(H) TO LIMIT THE DECEDENT, MARGARET YAN AND HER BENEFICIARIES THEIR CONSTITUTIONAL RIGHTS TO RECOVER WRONGFUL DEATH BENEFITS UNDER THE TORTFEASOR, ST. PAUL INSURANCE CO.'S, POLICY.
Coletta argues that the trial court erred in subjecting the claims made by Yan's estate and her parents to the $100,000 "each person" bodily injury liability limit. Specifically, Coletta contends that the consolidation clause contained in the St. Paul policy is unenforceable pursuant to Savoie v. GrangeMut. Ins. Co. (1993), 67 Ohio St.3d 500, paragraph one of the syllabus, and violative of Section 19a, Article I of the Ohio Constitution. Although Coletta cites R.C. 3937.18(H), St. Paul correctly points out that R.C. 3937.44 applies to claims for bodily injury liability coverage — the subject of this assignment of error — and R.C. 3937.18(H) applies to claims for uninsured/underinsured motorist coverage.
Part I of the St. Paul policy provides for bodily injury liability coverage with the following limitation:
LIMIT OF LIABILITY
 A. The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury to any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury
resulting from any one auto accident. * * *
 This is the most we will pay regardless of the number of insureds, claims made, vehicles or premiums shown in the Declarations, or vehicles involved in the auto accident.
 B. The Limit of Liability under this coverage shall be reduced by all sums paid under the Medical Payment Coverage, Uninsured Motorists Coverage, and/or Underinsured Motorists Coverage of this policy. However, no such reduction shall serve to reduce the Limit of Liability below that is required by the applicable financial responsibility laws.
 C. No one will be entitled to duplicate payments for the same elements of loss.
The parties do not dispute that, because Hui and St. Paul entered the insurance contract in December 1996, the version of R.C. Chapter 3937 as amended by Am.Sub.S.B. No. 20 ("S.B. 20"), effective October 20, 1994, applies to this case. See Ross v.Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281, 289. R.C.3937.44, which was added to Chapter 3937 by S.B. 20, provides:
 Any liability policy of insurance including, but not limited to, automobile liability or motor vehicle liability insurance that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one accident, may, notwithstanding Chapter 2125. of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident.
Senate Bill 20 amended R.C. 3937.18(H), the uninsured motorist coverage counterpart to R.C. 3937.44, to supersede the effect of the supreme court's declaration in Savoie, 67 Ohio St.3d 500, at paragraphs one and four of the syllabus, that a policy limit subjecting all claims arising from the wrongful death of one person to the "per person" bodily injury liability limit was unenforceable. Section 10, S.B. 20. Thus, the trial court correctly pointed out that Coletta's challenge to the "Limit of Liability" provision contained in Part I of the St. Paul policy based on Savoie is "unavailing."
The trial court also rejected Coletta's challenge to R.C.3937.44 as violative of Section 19a, Article I of the Ohio Constitution, which provides that "[t]he amount of damages recoverable by civil action in the courts for death caused by the wrongful act, neglect, or default of another, shall not be limited by law." This section of the constitution, which prohibits "only the enactment of laws that place a specific limitation on the amount of damages recoverable by the survivors," is not offended by R.C. 3937.44. Smith v. Mancino
(1997), 119 Ohio App.3d 418, 422-423. In other words, a tortfeasor's insurance policy is a contract limiting the amount of indemnification available to the insured from the insurer. It is not a law limiting damages recoverable from the tortfeasor. Thus, we agree with the trial court's conclusion that Coletta was subject to the "valid and enforceable limit on the maximum recovery of multiple wrongful death claimants under [the] bodily injury liability coverage" and that Coletta could only recover up to "the maximum 'per person' limit of $100,000 bodily injury liability coverage."
The assignment of error is overruled.
 II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT BY ALLOWING SENATE BILL 20 WHICH AMENDED O.R.C. SECTION 3937.18(H) TO LIMIT THE DECEDENT AND BENEFICIARIES' RIGHTS TO RECOVER UNINSURED/UNDERINSURED MOTORIST BENEFITS UNDER THE UNINSURED/UNDERINSURED PROVISIONS OF THE ST. PAUL POLICY.
Coletta contends that the trial court should have declared that Yan's estate and her parents, as wrongful death beneficiaries, could recover uninsured motorist benefits up to the $300,000 "per accident" limit because "their damages exceed those monies available to be paid under the liability limits of the policy."
St. Paul does not dispute that Yan's estate and her parents were "insureds" under the policy for purposes of uninsured motorist coverage. The trial court correctly observed, however, that the vehicle driven by Yang was not an "uninsured motor vehicle" as defined by an "amendatory" to Part IV of the St. Paul policy:
 The only policy definition which could possibly include the automobile involved is D(2): an automobile "to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage or reduced by payments to others injured in the accident to less than the limit of liability for this coverage." [Policy Amendatory, Part IV, p. 1] First, the policy limits for bodily injury liability and uninsured motorist coverage are equal, $100,000 per person and $300,000 per accident. Second, bodily injury liability limits under the policy are not reduced by payments to others injured in the accident because they would be made to Plaintiff as personal representative of the estate of decedent and on behalf of decedent's parents as wrongful death beneficiaries if they can prove their entitlement to recover in their wrongful death action and prove their damages. The automobile involved here should not be considered to be uninsured. (Emphasis sic.)
We cannot find fault with the trial court's determination that the automobile did not meet the policy definition of an "uninsured motor vehicle."[1]
The trial court also determined that, even if the automobile could have been considered an "uninsured motor vehicle," Coletta would not have been entitled to recover under the uninsured motorist provisions. The amendatory to Part IV of the policy contained a "Limit of Liability" clause that was nearly identical to the one limiting bodily injury liability coverage. Furthermore, the amendatory stated:
 C. With respect to the coverage under the definition of uninsured motor vehicle, to which a bodily injury liability bond or policy applies at the time of the auto accident but its limits for bodily injury liability [are] less than the limits applicable to this coverage, the limit of liability shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under this policy for Bodily Injury/Property damage or medical payments.
 D. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Bodily Injury/Property damage or Medical Payments of this policy.
Coletta claims that St. Paul cannot set off the amounts payable for bodily injury liability coverage from what it owes for uninsured motorist coverage because "an offset of $300,000 in liability coverage must be applied to total damages rather than the uninsured/underinsured policy limits of $300,000."
The amended version of R.C. 3937.18(A)(2) provides, in pertinent part:
 Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
The General Assembly amended former R.C. 3937.18(A)(2) to clarify that, despite the supreme court's holding inSavoie, 67 Ohio St.3d 500, at paragraph three of the syllabus, the purpose for enacting and amending division (A)(2) of the statute was "to provide an offset against the limits of underinsured motorist coverage of those amounts available for payment from the tortfeasor's bodily injury liability coverage." Section 8, S.B. 20. Furthermore, the "Limit of Liability" clause pertaining to uninsured motorist coverage under Part IV of the St. Paul policy is valid and enforceable under R.C. 3937.18(H) as amended by S.B. 20. See Section 10, S.B. 20. Thus, the trial court properly determined that Coletta was not entitled to uninsured motorist coverage because the $100,000 limit on recovery for Yan's bodily injury, including death, was equal to the $100,000 limit on recovery of uninsured motorist benefits.
Coletta further argues that R.C. 3937.18(H) is ambiguous and should be construed to effectuate the public policy of not eliminating compensation to wrongful death beneficiaries that the supreme court expressed in pre-S.B. 20 cases. Because the General Assembly emphasized in Section 10 of S.B. 20 its intent to supersede the supreme court's refusal in Savoie, 67 Ohio St.3d 500, at paragraphs one and four of the syllabus, to enforce a consolidation clause such as the St. Paul "Limit of Liability" provision, we cannot agree that R.C. 3937.18(H) is ambiguous in any respect.
Finally, Coletta challenges the constitutionality of S.B. 20 as violative of Section 16, Article I of the Ohio Constitution, the "right to remedy" clause. In Beagle v. Walden (1997),78 Ohio St.3d 59, 64, the supreme court determined that R.C.3937.18(A)(2) did not violate the "right to remedy" clause of the Ohio Constitution. See, also, Wilson v. Metropolitan Ins.
(Sept. 12, 1997), Montgomery App. No. 15951, unreported. Thus, we agree with the trial court's conclusion that Coletta was not entitled to uninsured motorist coverage.
The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG, J., concur.
Copies mailed to:
William E. Santen, Jr. James P. Nolan, II Hon. Dennis J. Langer
[1] Although the trial court cited R.C. 3937.18(K)(1) as further support for this conclusion, division (K)(1), a September 3, 1997 addition to R.C. 3937.18, was not effective at the time that Hui contracted for or renewed the St. Paul policy. SeeRoss, 83 Ohio St.3d at 289.