It is no longer possible to intelligently buy automobile insurance without the assistance of an attorney in Ohio. This tragic death case represents one more dune which has been built on the sea of shifting sands known as underinsured motorist coverage. In the area of automobile insurance, the buyers of "underinsured" motorist insurance have been told for years that if they purchase such coverage, the limits of their own insurance will be used to cover damages exceeding those received from the tortfeasor's liability insurance. There simply can be no other rational definition of the term UNDERinsured. The purchasers of this "underinsured" motorist coverage have also been told that each person covered by "underinsured" insurance has a separate claim subject to the person policy limits. See, Savoie v. Grange Mut.Ins. Co. (1993), 67 Ohio St.3d 500.
In response to Savoie, the Ohio Legislature once again "clarified" the insurance industry's position and ratified the practice of selling underinsured coverage which was anything but underinsured coverage. Essentially the legislature permitted the insurance industry to exclude claims such as the instant matter by unilaterally stating this is not "excess" coverage. What exactly is "excess" about a million dollar claim that has had $200,000 paid? Plaintiff's family has suffered a massive loss here, and no amount of dollars can compensate them for the loss and injuries suffered. At a minimum, however, they should receive that which they bargained for, and that is their underinsured motorist coverage.
In enacting Senate Bill 20, by the stroke of a pen, the Ohio General Assembly did away with all prior expectations of coverage under an underinsured motorist theory and stated, in a form of doublespeak, that "underinsured" motorist coverage was never meant to be "excess insurance." That much is obvious. But when the injured family purchased the insurance herein, is there a shred of evidence in the record to suggest that this "excess" coverage issue was ever addressed, let alone answered? There is not.
It is apparent that State Farm, in a policy issued after the effective date of Senate Bill 20, attempted to incorporate the changes made by the Ohio General Assembly into its policies of insurance with the Marics. I do not fault State Farm for attempting to take advantage of this change, as the insurance industry is free to alter their policies to incorporate new law. What I do not condone, as recognized by Justice Pfeifer in his concurring opinion in Beagle v. Walden (1997), 78 Ohio St.3d 59, is the apparent attempt at causing confusion with the insurance buying public as to what coverage is actually being purchased. In the constant shifting of the very foundation of underinsured motorist coverage, the public is being told one day that "underinsured" motorist coverage entitles them to a certain level of protection, while the next day they are being told that it means something entirely different. If an insurance company intends to take advantage of the provisions of Senate Bill 20, allowing for the restriction of multiple wrongful death claims into one per person limit, the policy must expressly state its intention to preclude coverage that previously existed and may be available in an alternative policy of insurance. This is basic contract law.
I remain troubled by the holding of the majority whereby they do not address the constitutionality of the statute in question since it was not litigated at the trial court level, and the Attorney General's office was not made a party. Such an analysis misses the fundamental question before this court. The money in question was put into a trust account pending the resolution of the constitutional questions before the Supreme Court of Ohio, thus reserving the issue. It is fundamentally wrong for this family to be held accountable for straightening out the tangled web of insurance law in Ohio. They did not receive what they bargained for. Thus, I respectfully dissent.
 ________________________ JUDGE WILLIAM M. O'NEILL