OPINION
Plaintiffs-appellants Emmitt and Patricia Haddad appeal the July 27, 1999, Judgment Entry of the Stark County Court of Common Pleas granting Summary Judgment in favor of defendant-appellee State Farm Mutual Automobile Insurance Company.
 STATEMENT OF THE FACTS AND CASE
On July 8, 1996, Emmitt (Rick) Haddad sustained injuries in an automobile crash. As he was headed south on Cherry Avenue, in Canton, Ohio, another car, driven by Peggy Watson, went out of control, crossed the median and crashed head on into the vehicle that Rick Haddad was driving. As a result, Mr. Haddad sustained serious permanent injuries including a closed head injury, a fractured jaw, a fractured right femur, a fractured right patella, a fractured left hip, and crushed bones in his right foot and ankle. The crash also knocked out ten of Mr. Haddad's teeth. Rick Haddad was taken by ambulance to the hospital where he remained unconscious for two days. Eventually Mr. Haddad was able to begin rehabilitation. Mr. Haddad now walks with a limp and has a permanent light duty restriction on his employment. At the time of the crash, Mr. Haddad was driving a car owned by stepdaughter, Carrie Polos. The vehicle was insured by appellee State Farm Mutual Insurance Company [hereinafter State Farm]. Ms. Polos' insurance policy provided underinsured motorist coverage in the amount of $50,000.00 for each person and $100,000.00 for each accident. At the time of the accident, Rick Haddad and his wife, Patricia Haddad, also had their own State Farm auto insurance policy. Mr. Haddad's policy provided underinsured motorist coverage in the amount of $50,000.00 for each person and $100,000.00 for each accident. As a result of the accident, Rick and Patricia Haddad filed a law suit against Peggy Watson and ultimately collected $100,000.00, the per person limit of Watson's automobile liability coverage. Because their damages exceeded the amount which Watson's liability carrier paid to them, the Haddads filed this action against State Farm. In filing their complaint and declaratory judgment action, the Haddad's avear that Am. Sub. S.B. 20 [hereinafter S.B. 20], as codified at R.C. 3937.18, effective October 20, 1994, is substantively unconstitutional. On December 29, 1998, the Haddads filed a Motion for Summary Judgment. State Farm filed a Motion for Summary Judgment on December 30, 1998. Although served with a copy of the compliant, the Ohio Attorney General elected not to participate in this action. On July 27, 1999, the trial court filed its Judgment Entry granting State Farm's Motion for Summary Judgment and denying the Haddad's Motion for Summary Judgment. It is from the July 27, 1999, Judgment Entry that appellant's prosecute this appeal, raising the following assignment of error:
 THE TRIAL COURT ERRED IN DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND THEREBY FINDING THAT AM. SUB. S.B. 20 IS SUBSTANTIVELY CONSTITUTIONAL.
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36, 506 N.E.2d 212. Civ.R. 56(C) states in pertinent part: Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421,429, 674 N.E.2d 1164, citing Dresher v. Burt (1966), 75 Ohio St.3d 280,662 N.E.2d 264. It is based upon this standard we review appellant's sole assignment of error. Appellants' assignment of error claims that summary judgment was granted in error based upon two different issues. The first issue is whether S.B. 20 violates Article I, Section 16 of the Ohio Constitution because it denies persons injured in vehicular accidents a meaningful remedy by due course of law. The second issue is whether S.B. 20 violates Article I, Section 2 of the Ohio Constitution because it denies certain persons injured in vehicular accidents equal protection of the law. Each of these issues will be addressed in turn. A. First, appellant argues that R. C. 3937.18 violates Article I, Section 16
of the Ohio Constitution. This provision of the Constitution provides: All courts shall be open, and every person for an injury done him in his . . . goods (or) person . . ., shall have remedy by due course of law. . . .
In Beagle v. Walden (1997), 78 Ohio St.3d 59, 676 N.E.2d 506
(plurality), the Supreme Court of Ohio answered the following question, certified to that court by the United States District Court for the Northern District of Ohio, Eastern Division: "Is Ohio Revised Code § 3937.18(A)(2) unconstitutional on any grounds under the facts of this case, including those stated by Plaintiff[?]." Appellant cites this court to what appellant argues are the crucial passages of S.B. 20. R.C. 3937.18 provides the following, In pertinent part: (A)(2)Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured. (H) Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section or selected in accordance with division (C) of this section and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may, notwithstanding Chapter 2125. of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident. Both insurance policies at issue here adopted this statutory language under this statute, Appellants, who have asserted the same issues as those raised in Beagle, would not be entitled to underinsured motorist proceeds, since their policy limits are the same as those of the tortfeasor. This statute is the legislative redress to the holding of Savoie v. Grange Mutual Insurance Company (1993), 67 Ohio St.3d 500, 515,620 N.E.2d 809, 820. Savoie interpreted coverage mandated by R.C.3937.18(A)(2) as it existed prior to the passage of S.B. 20 to require insurers to pay uninsured and underinsured coverage to the extent that the injuries of the insured's damages exceed the amount paid by the tortfeasor. The Beagle court first asserted in its opinion two primary assumptions which must guide courts when scrutinizing a statute for constitutionality: First, that "statutes are presumed to be constitutional unless shown beyond a reasonable doubt to violate a constitutional provision," and second, that "the legislature is the primary judge of the needs of public welfare, and [the supreme court] will not nullify the decision of the legislature except in the case of a clear violation of a state or federal constitutional provision." Id. at 61, 676 N.E.2d 506. The court then considered each proposition challenging the constitutionality of the statute, quoted supra, with a majority of four justices deciding only that the statute as a whole does not violate the one-subject rule. See Id. at 61-62. In Beagle, Justice Cook, in her opinion, in which Chief Justice Moyer and Justice Lundberg Stratton concurred, addressed the issue whether R.C. 3937.18(A)(2) destroyed a remedy created by Savoie. The Justices disagreed and concluded that Savoie was not based upon constitutional or common-law principles of full recovery in torts. While Beagle did not create law upon which this court can rely, we agree with Justice Cook's analysis. Justice Cook wrote that R.C. 3937.18 is a result of legislative policymaking and that coverage in accordance with R.C. 3937.18 is not a common law right. Any contractual right to coverage is not protected by Section 16, Article I of the Ohio Constitution. Beagle,78 Ohio St. 3d at 64. "To the extent that the legislature may exercise its policy making authority to alter the contractual relationship between insurer and insured to provide greater protection to the insured, it may also limit or remove those protections once given." Id. at 64 (citing Byers v. Meridian Printing Co. (1911),84 Ohio St. 408, 422, 95 N.E. 917). At least one court of appeals has addressed appellant's specific challenge. The Third District Court of Appeals considered this issue in the case of Ott v. Borchardt (March 31, 1998), Seneca App. No. 13-97-47, unreported, 1998 WL151076. In determining that R.C. 3937.18(A)(2) does not violate Article 1, Section 16 of the Ohio Constitution, the court first noted that the constitutional provision at issue has been held to prohibit only the enactment of laws that prevent an injured party from seeking a remedy by bringing an action against the tortfeasor. The Ott court found that the right involved in regards to S.B. 20 and underinsured motorist coverage is not the constitutional right to a remedy but only a right granted under a contract of insurance, which can be limited by the tortfeasor through authorization of a statute. The injured party retains the right to bring an action against a tortfeasor. We agree. As this court found in Plott v. Colonial Insurance Company (Feb. 23, 1998), Stark App. No. 1997 CA00203, unreported 1998, WL172845, in discussing R.C. 3937.44, another portion of S.B. 20, the Revised Code speaks only to the contractual agreement between the injured insured and his or her underwriting insurance company, not to one's right to bring an action against the tortfeasor. Alteration of the contractual relationship between an insurer and insured does not impinge one's constitutional right to seek remedy through an action against the tortfeasor. We find that S.B. 20, as codified at R.C. 3937.18, does not violate Article I, Section 16
of the Ohio Constitution. B. Appellant further claims that R.C.3937.18(A)(2) as amended by S.B. 20, is a reactionary measure that is unconstitutional under Article I, Section 2 of the Ohio Constitution. In pertinent part, Article I, Section 2 of the Ohio Constitution reads as follows: All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform or abolish the same, whenever they may deem it necessary. . .
This article is known as Ohio's "Equal Protection" Clause guaranteeing "that all similarly situated individuals be treated in a similar manner. . . . In other words, laws are to operate equally upon persons who are identified in the same class." State ex rel. Patterson v. Indus. Comm. (1996), 77 Ohio St.3d 201, 204,672 N.E.2d 1008. In Kenney v. Kaiser-Aluminum and Chemical Corp. (1975), 41 Ohio St.2d 120, 125, the Supreme Court held that "[t]he limitations upon governmental action by the Equal Protection Clauses of the Ohio and United States Constitutions are essentially identical." The Equal Protection Clauses of both the Ohio and Federal Constitutions forbid unequal treatment of similarly situated classes of persons, absent legitimate governmental interest. Keaton v. Ribbeck (1979), 58 Ohio St.2d 443, State v. Buckley (1968), 16 Ohio St.2d 128, and Beatty v. Akron City Hospital (1981), 67 Ohio St.2d 483. The Supreme Court has required at least a rationale basis to sustain a classification of any quality. However, if the discrimination infringes upon a fundamental right, it becomes the subject of strict judicial scrutiny and will be upheld only upon a showing of a compelling State interest. In such a case, the State must assume the heavy burden of proving that the legislation is constitutional. Beatty, 67 Ohio So.2d at 491-92. Appellant argues that the owners of automobile uninsured/underinsured insurance benefits in Ohio constitutes a class of persons. Appellant contends this class of persons has a fundamental right to seek full recovery for bodily injury. Appellant argues that there is no State interest in protecting insurers who issue underinsured coverage from having to pay limits of coverage to the extent that appellant's damages exceed the amount paid to appellant by the tortfeasor. See Savoie v. Grange Mutual Insurance Company (1993),67 Ohio St.3d 500, 515, 620 N.E.2d 809, 820. Appellant's argument that R.C. 3937.18 (A)(2) impermissibly treats the class of underinsured motorists and uninsured motorists benefit holders unequally, based solely on the vagaries of chance. We disagree. We agree with the Third District Court of Appeals Ott decision. The Ott court found that the passage of R.C. 3937.18(A)(2) does nothing more than permit insurers to set off amounts available for the payment from a tortfeasors liability against the limits of their own insureds underinsured motorist coverage. As the Supreme Court noted in Beagle: R. C. 3937.18 places a statutory obligation on all motor vehicle liability insurers to offer uninsured/underinsured motorists coverage. To this extent, the parties' freedom to contract is superceded in furtherance of important public policy concerns. In placing this obligation on insurers, the General Assembly dictates the terms of the mandatory offering of uninsured/underinsured motorists coverage . . . . because the obligation to offer uninsured/underinsured motorists coverage is rooted in public policy and imposed by the legislature, the legislature is free to velimit the obligation. Beagle,78 Ohio St. 3d at 64, 676, N.E.2d 506.
Thus, the Supreme Court explained that, because the industry's freedom to contract is restricted by the legislative enactment in the first place, the legislature rightly may define the limits of that restriction. Moreover, insureds are free to reject uninsured/underinsured motorist coverage altogether if the terms of such coverage are repugnant to them. As noted in the Beagle court, "differences in treatment based on the individual contract between the insurer and the insured do not impinge upon a fundamental right or burden a suspect class "of citizens". Id. at 63-64, 676 N.E.2d 506. Therefore, there is no violation of the equal protection clause. "The only classifications of insureds treated differently under R.C. 3937.18(A)(2) are those limits who, by contract, have chosen different policy limits." Id. at 63,676 N.E.2d 506. We find that S.B. 20, as codified at R.C. 3937.18 does not violate Ohio's equal protection clause. Since this appeal is limited to whether R. C. 3937.18 is constitutional, appellant's assignment of error is overruled.
In light of our finding of constitutionality, we find that the trial court appropriately granted summary judgment in favor of appellee and appropriately denied summary judgment in regards to the appellants.
 _______________________________ EDWARDS, J.
FARMER, J. and WISE, J. CONCUR.