OPINION
The plaintiffs-appellants, Todd and Rebecca Dicke and their two children, Michael and Lauren Dicke, appeal the judgment of the Allen County Court of Common Pleas granting summary judgment to the defendant-appellee, Safeco Insurance Company. For the following reasons, we affirm the decision of the trial court.
The pertinent facts and procedural history in this matter are as follows. On March 21, 1998, Appellant Todd Dicke was involved in a motor vehicle accident in Lima, Ohio. The accident was caused by the negligence of Dale Clary and resulted in Todd Dicke suffering serious bodily injury. Mr. Clary was insured by Nationwide Insurance Company and had an automobile liability policy with a limit of $100,000. Nationwide Insurance Company paid Todd Dicke $100,000 for his claim, the limit of the policy, and in return Dicke gave Clary a full release. This payment and release was done with the consent of the appellee, Safeco Insurance Company.
On October 21, 1999, the appellants filed a complaint against the appellee. The appellants alleged that pursuant to the automobile liability policy issued to them by Safeco Insurance Company of Illinois they are permitted to recover under the uninsured motorists provision. The appellants claim that, as the injured party, Todd Dicke is entitled to the entire amount of the policy, i.e. $100,000. Additionally, the appellants claim that Todd's wife, Rebecca, and their children, Michael and Lauren, have separate causes of action under the policy for the loss of services and consortium. In total, the appellants were seeking payment of $300,000, the "per occurrence" limit of the uninsured motorist policy. On March 30, 2000, the appellants amended their complaint and brought an additional claim against Safeco Insurance Company of America[1] under a homeowners' insurance policy. The appellants alleged that this policy also provides them with uninsured motorist coverage, with a policy limit of $300,000 per occurrence.
On June 30, 2000, both the appellants and appellee filed motions for summary judgment. On August 17, 2000, the trial court dismissed the appellants' motion and granted appellee's motion for summary judgment. It is from this judgment that the appellants now appeal, asserting two assignments of error.
Before addressing the appellants' assignments, it is necessary to set forth the standard of review in this matter. In considering an appeal from the granting of a summary judgment, we review the grant of the motion for summary judgment independently and do not give deference to the trial court's determination. Schuch v. Rogers (1996),113 Ohio App.3d 718. Accordingly, we apply the same standard for summary judgment as did the trial court. Midwest Specialties, Inc. v. FirestoneTire Rubber Co. (1988), 42 Ohio App.3d 6, 8.
Summary judgment is proper when, looking at the evidence as a whole (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C); Horton v. Harwick Chemical Corp. (1995), 73 Ohio St.3d 679. To make this showing the initial burden lies with the movant to inform the trial court of the basis for the motion and identify those portions of the record that demonstrate the absence of a general issue of material fact on the essential element(s) of the nonmoving party's claims.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Those portions of the record include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action. Civ.R. 56(C). Once the movant has satisfied this initial burden, the burden shifts to the nonmovant to set forth specific facts, in the manner prescribed by Civ.R. 56(C), indicating that a genuine issue of material fact exists for trial. Dresher, 75 Ohio St.3d at 293.
R.C. 3937.18(A)(2) allows an insurer to set off the tortfeasor's liability limits against their uninsured/underinsured coverage limits. The legislation states, in relevant part, as follows:
 Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
 In Beagle v. Warren (1997), 78 Ohio St.3d 59, the Supreme Court of Ohio explained that the analysis should focus on the levels of protection purchased by the insured. The Court stated "[I]f an insured purchases uninsured/underinsured motorist coverage in the amount of $100,000 per person and $300,000 per occurrence, the insured is guaranteed total recovery for an accident of up to those policy limits, regardless of the tortfeasor's insurance status. If the insured purchases higher or lower policy limits, those limits will dictate the total recovery available stemming from an accident with an uninsured or underinsured motorist." Id. at 63. In this case, the appellants bargained for uninsured/underinsured coverage of $100,000 per person; the same as the tortfeasor. The appellant received compensation from the tortfeasor in the amount of $100,000 and is now seeking to also collect from their underinsured motorist policy.
 Assignment of Error No. 1
 The trial court erred in holding that the insurance contract at issue in the case unambiguously precluded stacking of coverages.
 In their first assignment of error, the appellants make two contentions. First, the appellants claim that the appellee is not entitled to set-off of the amounts paid by the tortfeasor, as he was never determined to be legally liable. Secondly, the appellants contend that they are each, as members of the Todd Dicke family, entitled to their own loss of consortium claim under their underinsured coverage. For the following reasons, we disagree with both of the appellants' contentions.
The language of the uninsured/underinsured motorist insurance policy in question states in pertinent part:
LIMITS OF LIABILITY
 A. The limit of liability shown in the Declarations for "each person" for Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages. Including damages for care and loss of services (including loss of consortium and wrongful death), arising out of bodily injury sustained by any one person in any one accident.
 Subject to this limit for "each person," the limit of liability shown is the Declarations for "each accident" for Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident.
This is the most we will pay regardless of the number of:
1. Insured;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or,
4. Vehicles involved in the accident.
 In no event shall the limit of liability for two or more vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to injured persons. If none of the vehicles insured in this policy is involved in the accident, Uninsured/Underinsured Motorists Coverage is available to the extent of coverage of any one of the insured vehicles.
 B. With respect to coverage under Section 2 of the definition of uninsured motor vehicle and to Underinsured Motorists coverage, the limit of liability shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally liable. This includes all sums paid under Part A of this policy.
 C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A of this policy.
 D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.
 The record in this matter reflects that Appellant Todd Dicke received payment in the amount of $100,000 from Nationwide Insurance Company, the insurer of Dale Clary. The appellants insurance policy clearly provides for a set-off in the amount received by the appellants on behalf of persons "who may be legally responsible." The appellants now claim that the appellee is not entitled to set-off, as Clary was never determined to be legally responsible. It is undisputed that Dale Clary was the operator of the vehicle that collided with the vehicle driven by Appellant Todd Dicke. In their complaint, the appellants state that Clary negligently operated his vehicle resulting in Appellant Todd Dicke suffering bodily injury. As such, we find this assertion, as did the trial court, to be not compelling and without merit.
The appellants' second contention is that the family members of Appellant Todd Dicke have separate claims under the underinsured motorist policy due to the injuries sustained by their husband and father in this accident. For the following reasons, we disagree.
R.C. 3937.18(H) refers to underinsured motorist coverage and it specifically permits an insurance company to "include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and for the purposes of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident." Waite v. Progressive Ins. (1998), 128 Ohio App.3d 344; Lylesv. Glover (March 27, 2000), Allen App. No. 1-99-104, unreported.
In this case, the policy of insurance issued by the appellee contained sufficient language to affect the result prescribed in R.C. 3937.18(H). Todd Dicke was the only person present in his automobile at the time of the accident. The claims of the Dicke family members arise out of the injuries sustained by Todd. Therefore, under R.C. 3937.18(H), all claims arising out of Todd's injuries constitute a single claim.
Accordingly, the appellants' first assignment of error in overruled.
Assignment of Error No. 2
 The trial court erred in holding that the plaintiffs were not entitled to uninsured/underinsured motorist benefits under their homeowners' policy.
 The appellants argue that they are entitled to underinsured motorist coverage under their homeowner's insurance policy issued by the appellee by operation of law pursuant to R.C. 3937.18. For the following reasons, we disagree.
R.C. 3937.18 provides, in relevant part:
 (A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:
 (1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide for bodily injury or death under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy.
* * *
 (2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. * * *
 The appellants' contention rests on the assertion that their homeowner's insurance policy is an automobile liability policy for the purposes of R.C. 3937.18. It is settled law that insurers are required to offer uninsured/underinsured motorist coverage for every automobile liability policy issued in this state; in the absence of an express rejection, such coverage arises by operation of law. Abate v. Pioneer Mutual Cas. Co. (1970), 22 Ohio St.2d 161; Overton v. Western Reserve Group (Dec. 8, 1999), Wayne App. No. 99CA0007, unreported. It is undisputed that uninsured/underinsured motorist coverage was not offered by the appellee or rejected by the appellants. The appellee contends that the homeowner's policy is not an automobile liability policy for the purposes of R.C. 3937.18 and therefore it was not required to offer uninsured/underinsured motorist coverage. We agree.
The policy in question provides. in pertinent part:
SECTION II — LIABILITY COVERAGE
COVERAGE E — PERSONAL LIABILITY
 If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
 1. pay up to our limit of liability for the damages for which the insured is legally liable; * * *
SECTION II — EXCLUSIONS
 1. Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to bodily injury or property damage:
* * *
 e. arising out of the ownership, maintenance, use, loading or unloading of:
* * *
 (2)(a) motor vehicles or all other motorized land conveyances, including any trailers, owned or operated by or rented or loaned to any insured; or
 (b) entrustment by any insured of a motor vehicle or any other motorized land conveyance to any person.
This exclusion does not apply to:
 (a) a trailer not towed by or carried on a motorized land conveyance;
 (b) a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and owned by any insured, while on an insured location;
(c) a motorized golf cart;
 (d) a motorized land conveyance designed for assisting the handicapped or for the maintenance of an insured location, which is:
i. not designed for travel on public roads; and
ii. not subject to motor vehicle registration; or
 (e) a motorized land vehicle in dead storage on an insured location.
 In Selander v. Erie Ins. Group (1999), 85 Ohio St.3d 541, 544, the Supreme Court of Ohio recently concluded that where motor vehicle liability coverage is provided, even in limited form, uninsured/underinsured coverage must be provided. The insured in Selander was covered under a "General Business Liability Policy" that provided coverage for "all sums which anyone we protect becomes legally obligated to pay as damages because of personal injury or property damage" arising out of specified maintenance or use of hired or non-owned automobiles. Id. at 543. The policy specifically provided coverage only for (1) automobiles leased, hired, or borrowed, and (2) any automobiles used in connection with the business that were not owned, leased, hired, or borrowed by the insured. Id. The insured conceded that "automobile liability coverage was intended in limited circumstances" under the policy. Id. at 546. The Court held that the coverage was sufficient to transform the general business liability policy into an automobile liability policy for the purposes of R.C. 3937.18. Id. at 544-45.
The Ninth District Court of Appeals recently addressed the very issue asserted by the appellants in this case. Overton v. Western ReserveGroup (Dec. 8, 1999), Wayne App. No. 99CA0007, unreported. In Overton, the court held, that unlike the policy in Selander, in the case before them, there was no direct liability coverage, even in a limited sense, for motor vehicles. The court held that "the policy provision specifically excludes coverage for bodily injury arising out of the use of motor vehicles. While the exclusion described does apply to specific conveyances such as recreational off-road conveyances and golf carts, this incidental coverage is simply not enough to transform a homeowner's policy into an automobile liability policy." Id. at 3.
We agree with the rationale that our sister court employed in Overton
when they concluded that "[a] homeowner's policy such as the policy at issue in this case cannot be reasonably construed to provide uninsured or underinsured motorist coverage where there is no automobile liability coverage intended by the parties or contained within the policy." Id. at 4. Common sense alone would dictate that this would be an extension of coverage that the parties did not contemplate, bargain for, rate, or purchase. Scott-Ponzer v. Liberty Mut. Fire (1999), 85 Ohio St.3d 660, 670
(Resnick, J., dissenting).
For the foregoing reasons, we hold that the homeowner's policy issued by the appellee to the appellants was not an automobile policy for the purposes of R.C. 3937.18 and therefore, uninsured/underinsured motorist coverage was not required to be offered and does not arise by operation of law. Accordingly, the appellants' second assignment of error is not well taken.
Having found no error prejudicial to the appellants herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
WALTERS and BRYANT, JJ., concur.
[1] Safeco Insurance Company of Illinois and Safeco Insurance Company of America, were named as one defendant in this matter. They are jointly referred to as Safeco Insurance Company.