[Cite as *State v. Daviduk*, 2024-Ohio-411.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

SAM DAVIDUK,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 MA 0058**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2020 CR 537

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Gina DeGenova*, Mahoning County Prosecutor*,* and *Atty. Edward A. Czopur*, Assistant Prosecuting Attorney, Mahoning County Prosecutor's Office, for Plaintiff-Appellee and

*Atty. Mark Lavelle*, for Defendant-Appellant.

Dated: February 5, 2024

**HANNI, J.**

{¶1} Defendant-Appellant Sam Daviduk appeals from a Mahoning County Court of Common Pleas judgment overruling his motion to withdraw his guilty plea. Appellant contends that the trial court erred by not granting him a competency hearing. He also asserts that his sentence is erroneous because the Reagan Tokes Law is unconstitutional. For the following reasons, Appellant's assignments of error lack merit and are overruled.

{¶2} On September 3, 2020, the grand jury indicted Appellant for felonious assault in violation of R.C. 2903.11(A)(1) and (D)(1)(a), a felony of the second degree, with accompanying specifications for a prior conviction (R.C. 2929.13(F)(6)) and repeat violent offender (R.C. 2941.149(A)).

{¶3} On November 24, 2020, Appellant's counsel filed a motion for a competency evaluation pursuant to R.C. 2945.38, et seq. The court ordered an evaluation and stayed further proceedings pending the outcome of a hearing to determine Appellant's competency. Appellant was referred to the Forensic Psychiatric Center of Northeast Ohio.

{¶4} On December 23, 2020, the court issued a judgment entry scheduling a hearing on the request for a competency evaluation for December 29, 2020.

{¶5} On December 29, 2020, the court issued a judgment entry stating that the matter was called for a hearing on the motion for a competency evaluation with counsel and Appellant present. The court indicated that it granted the motion of Appellant's counsel for the trial court to delay ruling on the competency evaluation for 14 days. The court stated that it would rule on competency 14 days from the December 17, 2020 date of the competency evaluation report, unless Appellant requested a second competency evaluation before that time.

{¶6} On January 20, 2021, the court issued a judgment entry indicating that it had reviewed the competency evaluation and found Appellant competent.

{¶7} On February 17, 2021, the parties entered into a plea agreement whereby Appellant entered a guilty plea to second-degree felonious assault in violation of R.C. 2903.11(A)(1)(D)(1)(a). The plea agreement informed Appellant that he faced a minimum

term of 8 years and a maximum term of 12 years of incarceration. The State agreed to drop the specifications and recommend a sentence of 7 to 10.5 years of incarceration.

{¶8} The trial court held a change of plea hearing and engaged in the plea colloquy with Appellant. The court also advised Appellant about the Reagan Tokes Law, explaining that it provided that the court could choose from the minimum range of the sentence for a second-degree felony, and the maximum sentence would be based on the minimum sentence chosen. (Plea Tr. at 10). The court further explained that in Appellant's case, the minimum sentence is between 2-8 years of incarceration, and his maximum term was 12 years in prison. (Tr. at 10-11). The court indicated that at the sentencing hearing, Appellant's counsel would argue for a lesser sentence, and the prosecution would recommend a sentence of 7-10.5 years of incarceration. (Tr. at 11). The court explained the additional details under the Reagan Tokes Law, then accepted Appellant's guilty plea as freely and voluntarily given, with knowledge of all of its consequences. (Tr. at 17).

{¶9} On February 18, 2021, the court issued a judgment entry accepting the guilty plea and dismissal of the specifications to the felonious assault charge.

{¶10} On March 12, 2021, the court held a sentencing hearing. The prosecution played the video of the incident that resulted in the felonious assault conviction. The video showed a fight breaking out at Shotz Bar and Appellant placing the victim in a standing guillotine choke which rendered him unconscious. (Sent. Tr. at 3). The video further showed Appellant throwing the victim to the ground and stomping on his head six times following the choke, and then kicking the victim in the head and punching him. (Sent. Tr. at 3).

{¶11} The victim's father spoke at the hearing. (Sent. Tr. at 6). He stated that part of the victim's skull had to be removed due to brain swelling, and the victim had to be put on a ventilator and in an induced coma to help with the swelling. (Sent. Tr. at 6). The father further stated that the victim had memory problems, suffers constant headaches, and had to relearn to walk. (Sent. Tr. at 6).

{¶12} The State indicated that Appellant's sentencing memorandum was fairly accurate in that Appellant was not part of the initial fight that broke out at the bar. (Sent. Tr. at 8). However, the State noted that the fight involving Appellant began because he

used the "N" word and the victim is African-American. (Sent. Tr. at 8). The State also explained that Appellant has extensive mixed martial arts (MMA) training and used chokeholds to win his first three amateur fights. (Sent. Tr. at 8). The State further noted that Appellant had a prior felonious assault conviction in 2016 and the prosecution quoted from the sentencing hearing where the judge told Appellant that she was concerned that he would use his MMA training if he became angry after he was back out in the community once he served his prison sentence. (Sent. Tr. at 10). The State quoted Appellant's response that he would not do so. (Sent. Tr. at 10).

{¶13} Appellant's counsel presented arguments in mitigation. He referred to the police report which showed that the fight involving Appellant had nothing to do with him using the "N" word. (Sent. Tr. at 11). Counsel explained that as Appellant was exiting the restroom, he saw his sister in the middle of the initial fight and she was being beaten and knocked onto the floor. (Sent. Tr. at 11). Counsel stated that the victim was engaged in this fight and Appellant jumped in to protect his sister. (Sent. Tr. at 12). Appellant's counsel acknowledged that the fight ended when the victim became unconscious and Appellant's actions after that moment constituted a felonious assault. (Sent. Tr. at 12). Counsel also noted that Appellant had a difficult, abusive childhood and eight admissions to Belmont Pines. (Sent. Tr. at 15). He also explained that Appellant's social security benefits terminated at age 18, which made it difficult to afford further mental health assistance. (Sent. Tr. at 15).

{¶14} Appellant made a statement at the sentencing hearing. (Sent. Tr. at 18). He explained that the victim put his hands on Appellant's sister and he acted to prevent physical harm to her. (Sent. Tr. at 18-19).

{¶15} Before pronouncing sentence, the court noted that it reviewed counsel's sentencing memorandum and the competency evaluation report. (Sent. Tr. at 20). The court referred to Appellant's abusive childhood and his hospitalizations at Belmont Pines. (Sent. Tr. at 20). The court also acknowledged that treatment for Appellant ended at the age of 18. (Sent. Tr. at 20).

{¶16} However, the court explained that until the sentencing hearing, it was unaware of the extent of injuries sustained by the victim. (Sent. Tr. at 20). The court also acknowledged that Appellant had the opportunity to address his mental health issues

when he got out of prison for his last felonious assault. (Sent. Tr. at 21). The court expressed concern about Appellant's MMA training combined with his antisocial personality disorder and other mental health issues. (Sent. Tr. at 21). The court also explained that while Appellant's sister may have been the reason for Appellant to get involved and fight, it ended once the victim became unconscious. (Sent. Tr. at 22).

{¶17} The court concluded that upon considering the sentencing factors in R.C. 2929.12 and the Reagan Tokes Law, Appellant's sentence was an indefinite term of 7 years minimum incarceration to 10.5 years maximum. (Sent. Tr. at 22). On March 15, 2021, the court issued its sentencing entry.

{¶18} On January 25, 2022, Appellant wrote a pro se letter to the trial court. He asserted that trial counsel coerced him into pleading guilty for a crime that he did not commit. He alleged that counsel threatened him with 28 years in prison and no evidence existed against him other than his guilty plea. Appellant further asserted that the Reagan Tokes Law had nothing to do with his case and his sentence was unconstitutional.

{¶19} On February 22, 2022, the trial court overruled Appellant's motion.

{¶20} On May 18, 2022, Appellant sent another letter to the court stating that he did not understand why he could not have a fair trial.

{¶21} On June 1, 2022, Appellant filed a notice of appeal.

{¶22} After filing a proper motion for delayed appeal in this Court, we appointed counsel for Appellant and an appellate brief was filed. Thereafter, we granted a stay of proceedings until the Court's decision in *State v. Hacker*, Slip Opinion No. 2023-Ohio-2535, because that case concerned the constitutionality of the Reagan Tokes Act and Appellant presented similar arguments. On July 27, 2023, we notified the parties that *Hacker* had been decided and we reactivated this case.

{¶23} It is noted that neither of Appellant's assignments of error actually address his motion to withdraw his guilty plea. Appellant asserted in his letter, which the court deemed a motion to withdraw his plea, that he was threatened and coerced into pleading guilty by his attorney, there was no evidence against him, his prior conviction should not have been used against him, and he wanted transferred to a closer prison.

{¶24} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set

aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1. "[A] defendant seeking to withdraw a plea of guilty after sentence has the burden of establishing the existence of manifest injustice." *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977). A post-sentence plea withdrawal motion is warranted "only in extraordinary cases." *Id.* The defendant must show withdrawal is "necessary" to correct manifest injustice. *State v. Stumpf*, 32 Ohio St.3d 95, 104, 512 N.E.2d 598 (1987).

**{¶25}** Granting a motion to vacate a guilty plea "is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *Smith*, 49 Ohio St.2d at 264. The denial of a post-sentence plea withdrawal motion is reviewed under an abuse of discretion standard of review. *State v. Straley,* 159 Ohio St.3d 82, 2019-Ohio-5206, 147 N.E.3d 623, ¶ 15. In evaluating whether a court abused its discretion, we consider whether the trial court's ruling was unreasonable, arbitrary, or unconscionable. *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992).

**{¶26}** Appellant presents two assignments of error in his brief. We address his second assignment first.

**{¶27}** In his second assignment of error, Appellant asserts:

**UNDER R.C. 2945.37(B) A TRIAL COURT MUST HOLD AN EVIDENTIARY COMPETENCY HEARING IF A REQUEST IS MADE BEFORE TRIAL.**

**{¶28}** Appellant quotes R.C. 2945.37 as the relevant Ohio statute codifying the right to a competency hearing and the test to determine competency:

(B) In a criminal action in a court of common pleas or municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before trial, the court shall hold a hearing on the issue as provided in this section * * *.

**{¶29}** Appellant asserts that his counsel filed a pretrial motion requesting a competency hearing, the trial court granted the motion, and the court ordered a competency evaluation. However, Appellant contends that the court never held a

hearing, but issued a judgment entry on January 20, 2021 finding him competent based on the evaluator's report. Appellant asserts that this finding was made without a stipulation to the report and with no hearing.

**{¶30}** Appellant cites and quotes *State v. Berry*, 72 Ohio St.3d 354, 310, 1995-Ohio-310, 650 N.E.2d 433, where the Ohio Supreme Court held that:

> the right to a hearing on the issue of competency rises to the level of a constitutional guarantee where the record contains "sufficient indicia of incompetence," such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial.

**{¶31}** Appellant contends that sufficient indicia of his incompetence existed because his counsel requested a competency hearing, and he made the following "incoherent" response when the court asked him if he wanted to make a statement before sentence was imposed:

> Yes, Your Honor. Your Honor, the reason why the fight broke out was because Mr. Altman, he attacked my sister. He put his hands on her. I was restrained of my liberty by force, threat or deception and was deemed criminal in the attempt to facilitate the serious act of violence towards an innocent person. My intent was to prevent and/or cause – prevent physical harm without imminent death to my sister at that point.

(Sent. Tr. at 18-19). Appellant also quotes the trial court's statement at his sentencing that "no one should endure" the physical and sexual abuse that he suffered during his childhood and the numerous hospitalizations. (Sent. Tr. at 20). He notes that the court found his diagnosis of antisocial personality disorder and other mental disorders concerning, as well as his failure to seek help upon his last release from prison. (Sent. Tr. at 21).

**{¶32}** The trial court did not hold a competency hearing even though it granted Appellant's motion for a competency hearing. The court scheduled the hearing for December 29, 2020, but in its judgment entry issued on that same date, the court indicated that the case was called for hearing and Appellant orally motioned "the court to

delay ruling on the competency evaluation for 14 days." The court indicated that it sustained the motion and would rule on the December 17, 2020 competency evaluation report in 14 days, unless Appellant requested a second competency evaluation. On January 20, 2021, the court issued a judgment entry finding Appellant competent based on the competency evaluation report. No hearing was held.

**{¶33}** "Fundamental principles of due process require that a criminal defendant who is legally incompetent shall not be subjected to trial." *Berry*, 72 Ohio St.3d at 359. R.C. 2945.37(B) provides that:

> In a criminal action in a court of common pleas, a county court, or a municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion.

**{¶34}** In *State v. Bock*, 28 Ohio St.3d 108, 109-110, 502 N.E.2d 1016 (1986), the Ohio Supreme Court held that a competency hearing is mandatory when a defendant's competency is raised before trial. *Id.* at 109. However, the Court also held that a trial court's failure to hold a competency hearing can constitute harmless error where "the defendant proceeds to participate in the trial, offers his own testimony in defense and is subject to cross-examination, and the record fails to reveal sufficient indicia of incompetency." *Id.* at 110.

**{¶35}** In *State v. Hough*, 169 Ohio St.3d 769, 2022-Ohio-4436, 207 N.E.3d 788, the Ohio Supreme Court reaffirmed its holding in *Bock* of a right to a competency hearing when a request is made before trial. The Court also reaffirmed its holding that whether a court's failure to hold a competency hearing is reversible error should be determined on a case-by-case basis. *Id.*, citing *Bock*, 28 Ohio St.3d at 109-110, 502 N.E.2d 1016.

**{¶36}** In *State v. O'Neill*, 7th Dist. Mahoning No. 03 MA 188, 2004-Ohio-6805, ¶ 21, we held that "[w]here the parties stipulate to the contents of the competency reports

which opine that the defendant is competent, the parties stipulate to competency and waive the competency hearing."

{¶37} There is no transcript of the December 29, 2020 proceeding in the record. The only support for the discussion at that hearing must be gleaned from the court's judgment entry on that date. This judgment entry, coupled with statements made by Appellant's counsel at the February 17, 2021 change of plea hearing, confirm that Appellant stipulated to the contents of the competency evaluation report and therefore waived a competency hearing. At the beginning of that hearing, Appellant's counsel informed the court that Appellant's competency was evaluated and Appellant was found competent to stand trial. (Plea Tr. at 3). Appellant's counsel further stated: "that report was stipulated, accepted by the court. Being the only evidence on the subject, the court found, in fact, Mr. Daviduk was competent." (Plea Tr. at 4). Appellant's counsel again agreed with the finding of competency based upon his communications with Appellant about the case. (Plea Tr. at 4).

{¶38} Based on *Hough, Bock,* and *O'Neill,* Appellant waived his right to a competency hearing by stipulating to the contents of the competency evaluation.

{¶39} Accordingly, Appellant's second assignment of error lacks merit and is overruled.

{¶40} In his first assignment of error, appellant asserts:

**AS AMENDED BY THE REAGAN TOKES ACT, THE REVISED CODE'S SENTENCES FOR QUALIFYING FELONIES VIOLATES THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO.**

{¶41} Appellant asserts that the Reagan Tokes Law is unconstitutional because an increase in a sentence beyond the presumptive sentence depends on findings made by the Ohio Department of Rehabilitation and Correction (ODRC) and not a jury. Appellant contends that this violates the separation-of-powers doctrine because it places the determination of an offender's sentence in the hands of the executive branch and not the judicial branch.

{¶42} Appellant cites *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 2000-Ohio-116, to support his assertion that the Reagan Tokes Law violates the separation of

powers. In *Bray,* the appellants challenged former R.C. 2967.11, which allowed the Ohio Parole Board to extend inmate prison terms for certain violations. The Ohio Supreme Court held this part of the statute unconstitutional because it allowed the executive branch to "try[ ], convict[ ], and sentence[ ]" inmates for the offense committed inside of the prison. *Id.* at 136.

**{¶43}** The Reagan Tokes Law, effective March 22, 2019, generally provides that first-degree and second-degree felonies not carrying a life sentence are subject to an indefinite sentencing scheme. When imposing prison terms for offenders with first-degree or second-degree felony offenses, sentencing courts are to impose an indefinite sentence, meaning a stated minimum sentence as provided in R.C. 2929.14(A)(2)(a) and an accompanying maximum sentence as provided in R.C. 2929.144.

**{¶44}** Once an offender serves the required minimum term of incarceration, the Reagan Tokes Law states that the offender is presumed to be released. R.C. 2967.271(B). However, the ODRC may rebut the presumption of release and maintain the offender in custody for a reasonable period of time, not to exceed the maximum term of incarceration imposed by the sentencing court. R.C. 2967.271(D). The ODRC may overcome the presumption of release only if it conducts a hearing and finds that one or more of the following apply:

> (1)(a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender **has not been rehabilitated**, [and]

> (b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section demonstrate that the offender continues to **pose a threat to society**.

> (2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in

extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

R.C. 2967.271(C)(1), (2), and (3) (emphasis added).

{¶45} Appellant asserts that the bad-time provision in *Bray*, allowing the Ohio Parole Board to extend inmate prison terms is the same as the extension of time by the ODRC in the Reagan Tokes Law. He submits that both allow the executive branch to tell an inmate that the court's sentence is insufficient and to determine if an inmate will serve a longer sentence. Appellant also submits that the Reagan Tokes Law violates the separation-of-powers doctrine because the prerequisites for an extended sentence relate to the determinations made by the ODRC during imprisonment. He contends that this unconstitutionally allows the executive branch to act as prosecutor, judge, and jury.

{¶46} Appellant further contends that the Reagan Tokes Law fails to provide adequate notice of the conduct or circumstances that trigger extended prison times. He submits that the phrases "not been rehabilitated" and "pose a threat to society" are amorphous standards in R.C. 2967.271(A)(1) for determining a sentence increase. Finally, Appellant asserts that R.C. 2967.271(A)(2) and (3) allow unreviewable decisions for increasing or extending a sentence. He states that they provide that offender placement in restrictive housing or designation of a level 3 security are factors that trigger an increased sentence. He points out that it is ODRC who determines where an inmate is placed or his security level and therefore ODRC is given unfettered discretion to make any judgment without review.

{¶47} Appellant's first assignment of error lacks merit and is overruled. The constitutionality of a statute presents a question of law that appellate courts review de novo. *Cleveland v. State*, 157 Ohio St.3d 330, 2019-Ohio-3820, 136 N.E.3d 466, ¶ 15. Because statutes are presumed constitutional, any challenge must be proven beyond a reasonable doubt. *Beagle v. Walden*, 78 Ohio St.3d 59, 61, 676 N.E.2d 506 (1997).

{¶48} On July 26, 2023, the Ohio Supreme Court addressed the unconstitutionality of the Reagan Tokes Law in *State v. Hacker*, Slip Opinion No. 2023-

Ohio-2535. There, the appellants argued that the part of the Reagan Tokes Law that allows the ODRC to maintain an offender's incarceration beyond the minimum prison term imposed by a trial court was unconstitutional. They asserted violations of separation of powers, the right to a jury trial, and the right to procedural due process. *Id.*

**{¶49}** The Ohio Supreme Court rejected the claims and upheld the constitutionality of the Reagan Tokes Law. *Id.* at ¶ 25, 28, 40. The Court addressed the same arguments made by Appellant in this case in *Bray.* The Court held that the challenged part of the Reagan Tokes Law did not violate separation of powers because any extended or additional time imposed by the ODRC due to the inmate's prison conduct was limited by the sentence that the trial court had already imposed. *Id.* at ¶ 23. The Court further held that the right to a trial by jury is not violated by this part of the Reagan Tokes Law because the guilty verdict or guilty plea determines the range of penalties, the court determines the minimum sentence, and the determination of the maximum sentence is based on the minimum sentence. *Hacker*, 2023-Ohio-2535, at ¶ 28. The Court held that any determination by the ODRC concerning an inmate's prison behavior does not modify that range. *Id.*

**{¶50}** The Ohio Supreme Court further held that the language in the Reagan Tokes Law that the ODRC uses to determine when an offender "has not been rehabilitated" or when an offender "poses a threat to society" was not void for vagueness. *Hacker*, 2023-Ohio-2535, at ¶ 32. The Court held that this language must be read in conjunction with the preceding part of the law:

> [t]he infractions or violations that may 'demonstrate that the offender has not been rehabilitated' are those 'that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or * * * a violation of law that was not prosecuted.'

*Id.*, quoting R.C. 2967.271(C)(1)(a).

The Court held that these provisions provide adequate notice to offenders. *Id.*

Case No. 22 MA 0058

**{¶51}** The Court also held that the Reagan Tokes Law does not violate procedural due process because it provides offenders with a hearing before the ODRC may continue their incarceration. *Hacker*, 2023-Ohio-2535, at ¶ 35. The Court held that offenders were therefore afforded meaningful notice and opportunities to be heard. *Id.*

**{¶52}** The *Hacker* Court also rejected the appellants' assertion that the ODRC had unfettered discretion to determine whether an inmate's infractions require his continued incarceration. *Id.* at ¶ 33. The Court found that the ODRC was vested with similar authority in the Ohio Administrative Code and allowing the ODRC some discretion under the Reagan Tokes Law did not render the law unconstitutionally vague. *Id.*

**{¶53}** For these reasons, Appellant's first assignment of error lacks merit and is overruled.

**{¶54}** For the above reasons, we find no merit to Appellant's first and second assignments of error and affirm the decision of the trial court.


Waite, J., concurs.

Robb, P.J., concurs.

Case No. 22 MA 0058

[Cite as *State v. Daviduk*, 2024-Ohio-411.]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**